Essex,
March,
1831.

## DAVID FRY vs. WILLIAM SLYFIELD.

*An action of book account lies for labor done by the month at a fixed price, and payable at a future day, if payment is not made as agreed.*

*The value of labor performed, or of articles delivered, may be recovered in this form of action, but not so of damages for the breach of any contract, or for any tort committed.*

*Auditors ought to report directly the facts they find proved, in relation to the items of account charged, and not detail the evidence in support of those facts.*

This was an action of *book account* which was sent to auditors from the county court, who returned their report, at the next term, in favor of the plaintiff. The defendant filed several exceptions to this report ; yet it was accepted by the court, and judgement was rendered thereon. Exceptions were filed to that decision, upon which the cause came up to this Court. The facts reported by the auditors were as follow, to wit : The defendant had, in the fall of the year, 1827, sold part of the timber upon a lot of land in Lancaster to one Daniel Gregory, junr. and had hired said Gregory to get the rest of the timber on the same lot to Connecticut river. Gregory hired Messrs. Cole and Badger to draw this timber to the river ; and the defendant, when spoken to upon the subject, said, he had nothing to do with the work. The plaintiff had conversation with Cole and Badger about working for them, and asked the defendant, if he would be accountable for the pay, if plaintiff should work for Cole and Badger. The defendant answered no, and said he had nothing to do with them. The defendant then agreed with the plaintiff to work for him, the defendant, with plaintiff's and defendant's oxen, at Percy, at the price of $15 dollars a month, to be paid in July following. About January 1st, 1828, when the plaintiff was collecting his team to repair to Percy to work for the defendant, and called upon the defendant for his oxen, the defendant had sold his oxen to Cole, and had desired Cole to take into his service the plaintiff with his oxen whom defendant had thus hired. This Cole declined doing. Of this the defendant informed the plaintiff. Immediately afterwards, the defendant wrote to the plaintiff, directing him to go to Percy, and work with his own oxen, till he, the defendant, should come up. Afterwards, on the same day, the defendant sent, by his brother, a verbal message to the plaintiff, requesting him to go down the river and help Cole up with a load to Lancaster, and stay there and work with Cole and Badger, if they wanted ; if not, to go on to Percy. The plaintiff helped Cole with his load up to Lancaster ; and Cole and Badger concluded to have plaintiff

Essæx.
March, .
1831

Fry
vs.
Slyfield

stop and work with them, as the defendant had directed ; and the plaintiff labored for them during the time charged in his account. After the plaintiff had labored thus three or four days, he saw the defendant and said to him, " well, they have stopped me." Defendant replied, " it is very well." They saw each other afterwards but had no further conversation on the subject. Neither Cole nor Badger hired the plaintiff, nor promised to pay him. The plaintiff, a little before he stopped working for Cole and Badger, observed to one Wright, a witness, that he thought Cole and Badger would have a hard job of it ; and he did not know he should get his pay of *Slyfield*, on account of his stopping at Lancaster ; and asked Wright's opinion about defendant's liability to him ; and said he expected to have gone to Percy, but Cole and Badger stopped him. Afterwards he spoke of the uncertainty of his getting his pay, as a reason for his not continuing to work longer with Cole and Badger. Gregory had since deceased. Badger settled with him in his life time, when Gregory agreed to pay all the hands for their work, and accounted with Badger only for his work. No settlement was made with Cole till after Gregory's death, when Cole's claim was settled before commissioners, he urging no claim for certain over distances in drawing timber, on account of his finding no charge against him in favor of Gregory's estate for *Fry's* work. Gregory hired Cole and Badger to draw the timber, and this was the job on which *Fry* worked with Cole and Badger.

*Mr. Hibbard, for the defendant.*—If there was any agreement of the parties in relation to the work, it was a special one, not only as to the price, but as to the time of payment ; (i. e.) plaintiff was to work himself and with his oxen during the sledding season at $15 per month, and receive his pay in the month of July then next. Can such a transaction be the subject of book account ? If this was an action at common law, to recover pay for this work, the plaintiff would be compelled to declare on the special contract or agreement ; and he could not recover on a general count ; for by the report of the auditors there was a special contract. Again, the plaintiff would be compelled to aver and prove performance on his part, or he could not recover. The auditors have reported, that plaintiff left off work about a week before the sledding season was over, on account of the uncertainty of getting his pay. Is it not manifest, that *Fry* never did perform his contract ?

*Fry* never did any work for the defendant, and every fact found

by the auditors strongly establishes this conclusion. It is true,that the auditors say, in one part of their report, that "on the 1st day " of January, 1828, defendant sent his brother, Benjamin Slyfield, " to plaintiff with a verbal request, that the plaintiff should pass " down through Waterford and help said Cole up with his load to " Lancaster ; and stay there and work with him and Badger, if " they wanted." By this, *William Slyfield* meant to be understood, that *Fry* might let himself to Cole and Badger, if they wanted to hire him. To pretend that the report means any thing more, when taken in connection, would be absurd. Let us examine and see what facts, the report does state, were found by the auditors.

1st. *Slyfield* refused to be accountable for the pay for plaintiff's work, if he worked for Cole and Badger, because he had nothing to do with their job.

2d. *Slyfield* hired *Fry* to work *for him* at Percy, N. H. ; but *Fry* stopped and worked for Cole and Badger at Lancaster.

3d. *Fry* told one Wright, that he did not know as he could get his pay of *Slyfield*, on account of his stopping at Lancaster— and also told Wright, that when he got to Lancaster he expected to have gone on to Percy ; but Cole and Badger stopped him.

4th. *Fry* told Wright that he should not stay any longer with Cole and Badger,on account of the uncertainty about his pay, and accordingly went away.

5th. The auditors say, that it did not appear, that *Slyfield* agreed to pay *Fry* for his work with Cole and Badger, at Lancaster, except as is above detailed. Now, what is " *above detailed*" in relation to the pay for *Fry's* work with Cole and Badger ? We shall look in vain for any thing in the report ; only, that *Slyfield* refused to be accountable for *Fry's* pay, if he worked for Cole and Badger.

*Mr. Davis, for the plaintiff.*—The contract was *special* as to the *amount* and *time* of payment. It has been repeatedly, and fully, settled, both in Connecticut and this state, that a special agreement, as to these particulars, does not exclude the action on book.—*Read* vs. *Barlow*, 1 *Aikens' Rep.* 100 ; *Miller* vs. *French*, 1 *Aikens' R.* 99 ; *Stevens* vs. *Richards et al.* 2 *do.* 83 ; *Fay et al.* vs. *Green*, *do.* 386 ; 1 *Swift's Dig.* 729, 582. The same doctrine was recognized by this Court in Caledonia, March term, 1830, *Paul* vs. *Trescotte* ; 1 *Vt. Rep.* 97, *Barlow* vs. *Read* ; *ibid.* 146, *Barlow* vs. *Butler* ; 2 *Vt. Rep.* 65, *Boardman* vs.

*Keeler et al.*; *Id.* 366 *Newton* vs. *Higgins*; *Id.* 455, *Skinner* vs. *Conant.*

Essex,
March,
1831.

Fry
vs.
Slyfield.

The only question for the auditors to determine was, whether, from the evidence before them, it appeared that the plaintiff, when at work at Lancaster, was still in the service of defendant, in pursuance of the original hiring and subsequent directions, or not. They have determined that question very properly, as appears from their report of the evidence, and, at all events, that determination is conclusive.

Hutchinson, C. J., delivered the opinion of the Court.— The report of the auditors, and judgement of the county court, having been in favor of the plaintiff, it is now urged as error, that the plaintiff's claim cannot be sustained in this form of action. The claim consisted of one charge of labor, for a time stated, of himself and oxen, at $15 a month. It is objected, that this work was done under a special agreement, that the price was fixed, and that the payment was to be made at a then future day; and also, that he did not work out the time for which he agreed. The Court consider none of these objections available. The line of distinction between what can, and what cannot, be recovered in the book account action, has never been drawn with such particularity, in this state, as to become a guide in every possible case that may arise: nor is it easy so to comprehend the infinite varieties, that may in future be attached to the items claimed, as to form any rule that ought to govern the whole. Decisions made in particular cases have been referred to by counsel; but not exactly covering all these objections. We may safely go so far as to say, that a mere claim for damages for any tortious act or neglect, or for any breach of contract, cannot be recovered in this action; and that, in general, any claim for labor performed, or articles of personal property sold and delivered, and which have been properly charged on book, may be recovered in this action, as well as in any other. If the price has not been agreed by the parties, it must be set at a fair value; but its being agreed, does not deprive the party of his action on book. He might not be able to prove his claim in assumpsit, and might fail to recover. If he sues on book, and discloses on oath that a price was agreed for his labor, and this should throw him out of court, he would be without remedy. Just so, should he disclose honestly, what is not known to any but the parties, that payment was to be made at a day then future, but which is gone by when the action is brought, he might be

GG

left without remedy.   The plaintiff must not recover in this, any more than in any other action, before the payment is become due. And it is proper to charge for articles sold, when they are delivered.   If the price is agreed, charge at that price.   If pay-day is future, let the charge stand till due ; and, if then paid, credit the payment : if not paid, it becomes as mature for the book account action, as any other.   A great share of the merchants' accounts in the country are of this character.   Every man knows at what prices he expects to pay for the goods he takes at the stores, and he usually expects a day of payment for what he permits to be charged on book.

The position, that this contract contains a condition precedent not performed by the plaintiff,is not supported by facts.   True, the case states that the plaintiff was to work during sledding ; but it also states, that sledding failed, which gave plaintiff a good reason to retire, aside from the one he spoke of to Wright.   There is now no dispute, but that the plaintiff labored to the amount allowed him by the auditors, nor, but that the pay-day had arrived before the action was commenced.

The remaining question is whether the defendant is holden to pay this sum to the plaintiff, upon the facts reported by the auditors.

The auditors have made themselves and the Court considerable trouble by the shape in which they have presented the facts. They ought to have found expressly, either that the plaintiff did, or did not, perform the labor ; and, that he did, or did not, perform it under the employment of the defendant ; or under his contract with the plaintiff.   Instead of this, they have adopted a tedious circumlocution, touching upon all the incidents in testimony before them, from which they ought directly to have inferred, and reported, the facts.   And what is the result of all this circumlocution ?   It just amounts to this, that the plaintiff did the work with or for Cole and Badger, but without their hiring him, or promising to pay him ; but being actually hired by the defendant to labor during the same period, and directed by him to stop and work for Cole and Badger, if they wanted.   Upon these facts the plaintiff is entitled to recover of the defendant.   If the defendant intended to dismiss the plaintiff from his employment, and have him hire himself out to Cole and Badger, and they become indebted to him for his labor, he ought to have seen to it, that the plaintiff as well as Cole and Badger, so understood it at the time.   Of this there is no intimation in the facts reported.   And

Essex.
March,
1831

Fry
vs.
Slyfield.

It was treated otherwise by Cole, Badger and Gregory, in all their accounts and settlements. Furthermore, a view is presented, which renders it probable, that the defendant had an interest in having the plaintiff work with or for Cole and Badger, and his work not be carried into any of their accounts. It appears, that Cole and Badger were at work for Gregory in drawing not only the timber sold by the defendant to Gregory, but that which belonged still to the defendant, and which Gregory was drawing for the defendant upon hire. Now, it is evident, that, if Cole and Badger had hired and paid the plaintiff, they must have charged it to Gregory, and, if they drew defendant's timber, Gregory must charge to defendant. But it appears, that Cole and Badger did not pay the plaintiff, nor make any charge against Gregory on account of the plaintiff's work. Hence Gregory could have no charge against the defendant for having paid Cole and Badger for plaintiff's work. Now let the defendant pay the plaintiff for this work, and all will seem about correct.

The uncertainty about the defendant's liability, spoken of by the plaintiff to Wright, seems to have no proper bearing upon the case. His uncertainty was about the legal effect of things as they existed. It was the same uncertainty, which prompted the defendant to make his defence ; the same, on which opposite counsel disagree ; the same, which has made the auditors, and the county court, and this Court, the trouble of hearing and deciding between the litigant parties. He has not confessed any fact to Wright, which serves to attach any uncertainty to his claim, in a legal point of view. The difficulty was, he did not know the law.

The judgement of the county court is affirmed.

*Hibbard*, for defendant.

*Davis*, for plaintiff.