Harris and another *v.* Miller and another.

(*Circuit Court, D. Oregon.* March 8, 1880.)

1. CONTRACT—DAMAGES FOR BREACH OF.

Whenever a contract is for the doing or not doing of a particular act or acts, and there is no certain pecuniary standard by which to measure the damages resulting from a breach thereof, an agreement to pay a stipulated sum as damages for such breach will be enforced literally; but where it is doubtful whether the sum mentioned was intended as stipulated damages or a penalty to cover actual damages, the law declares that the sum was intended as a penalty.

2. SAME—CONSTRUCTION.

Where A. and B. agree to pay C. and D. $1,800 for five years for rent for certain rooms in a building to be erected by the latter, and also to make, execute, and deliver to them a good and sufficient bond in the sum of $2,000, conditioned for the payment of such rent, it was *held* that the contract should be construed as requiring a bond executed by other persons than A. and B., and that C. and D. had a right to require a bond sufficient to secure the rent beyond a reasonable doubt, and that if, acting in good faith, they rejected the bond tendered by A. and B. as insufficient, the latter are bound by their action.

*Addison C. Gibbs* and *Edward Bingham*, for plaintiffs.

*W. Carey Johnson* and *I. A. Macrum*, for defendants.

DEADY, D. J.  The plaintiffs, M. Harris and M. Lichenstein, bring this action to recover the sum of $2,000 as liquidated damages for the alleged violation of an agreement by the defendants, James D. Miller and Charles P. Church, to construct a brick building on the south-east corner of First and Morrison streets, in this city, and to lease to the plaintiffs certain rooms therein for the term of five years from and after July 1, 1878.  The cause was heard by the court without a jury upon the issues of fact, and, at the same time, upon a demurrer to the replication.  From the evidence it appears that on December 8, 1878, the plaintiffs and defendants entered into a written agreement whereby the latter agreed to erect a brick building upon a lot on the south-east corner of First and Morrison streets, in this city, and to lease to the former certain rooms therein for the term of five years from and after July 1, 1878, for the monthly rent of $150, payable in advance, in consideration whereof the defendants agreed to so pay said rent, and "to make, execute, and deliver" to the defendants on or before February 1, 1878, and to their satisfaction, "a good and sufficient and approved bond in the sum of $2,000, conditioned to become void on the payment of said rent, and to become forfeited as "the agreed and fixed amount of damages" to be recovered by the defendants for a default of 30 days in the payment of said rent; and a failure on the part of the plaintiffs to so furnish such bond was to render the agreement void.  It is also provided in said agreement that any failure upon the part of the defendants to perform the same shall entitle the plaintiffs to recover the sum of $2,000 for such failure, as "stipulated and liquidated damages."

The defence to the action, as contained in the answer, is that the sum mentioned in the agreement as liquidated damages for the violation thereof, was only intended as a penalty; that the defendants erected the building as per said agreement; but that the plaintiffs did not on or before February 1, 1878, nor since, deliver to the defendants a good and sufficient bond, as by said agreement they undertook and promised.

The replication alleges that before February 1, 1878, the defendants had so changed the plan of said building as to put it out of their power to comply with their agreement, and thereby excused the plaintiffs from tendering the bond for payment of the rent.

The argument in support of the replication is that if the defendants, on February 1, 1878, by reason of their own act, were unable

to perform their contract, the plaintiffs may recover the stipulated damages for non-performance, without having complied with the condition precedent on their part, to-wit, the delivery of the bond for the payment of the rent. As authority for the proposition, counsel cite *Pattridge* v. *Gildermiester*, 40 N. Y. 96, and *Hawley* v. *Keeler*, 53 N. Y. 120. The first case is one where a party to a contract having failed to perform a condition precedent, the other was allowed to recover for part performance, and is therefore not in point. In the second case the court does say that "the party who disables himself from performing his contract before default by the other party waives the performance of acts by the latter, which, except for such disability, he would be bound to perform as conditions precedent to a recovery on the contract." But the court held that the contract to give security for the payment of a quantity of cheese was not a condition precedent to the delivery thereof, but only concurrent with such delivery, and that, therefore, when the owner of the cheese had otherwise disposed of the same before the time for delivery, the other party was excused from providing or tendering the security, and might maintain an action for the non-delivery.

But the giving of the bond for the payment of the rent was a condition precedent in this case, and a very material one, for upon the faith of it the defendants were not only to furnish the rooms for five years, but in a large part to incur the expense of constructing a comparatively costly building.

However this may be, this demurrer must be sustained, because a mere change of plan before February 1, 1878, did not in the least degree affect the ability of the defendants to construct the building so as to furnish the plaintiffs with rooms therein according to the contract. The plan of the building might be changed every day. The defendants were under no obligation to build according to any plan until the bonds were furnished for the rent, and when that was done they could build according to the agreement, notwithstanding any changes of plan that may have been made in the mean time.

Considering the case, then, with this demurrer sustained, from the evidence the further facts appear to be that early in January the the plaintiffs delivered to the defendants a bond in the sum of $2,000, in due form of law, conditioned for the payment of the rent, as provided in the agreement, executed by themselves and William Harris and Isaac Friedman, of San Francisco, on December 26, 1879. Soon after it was received, the defendants sent the names of the sureties to Dun & Co.'s commercial agency in San Francisco, to ascer-

tain their financial condition and standing, and towards the last of January received an answer to the effect that they were not at all equal to any such undertaking, and that what real property they had was covered with homesteads; and there is no evidence in the case tending to show the fact to be otherwise. On January 30th defendants returned the bond to the plaintiffs, saying: "Neither of the parties referred to seem to be men of any financial standing beyond the value of homestead exemption, and we therefore refuse the bond offered by you, not being satisfied with the guarantors thereon. We require men of undoubted standing as bondsmen, particularly as the amount of the bond is much less than the aggregate liability for rental."

The work upon the building was not commenced until in March, and, so far as the rooms which the plaintiffs were to have are concerned, the building was constructed substantially as was contemplated at the time of the agreement, except that the width of the principal room on the lower floor was one foot in twenty-nine less, and that an elevated platform and a small circular stairway, convenient for the uses of the plaintiffs, were not put in said room, but can be at any time at a comparatively small cost.

After refusing the bond offered by the plaintiffs, the defendants were still willing and offered to allow the plaintiffs to give a satisfactory bond, but the plaintiffs did nothing further in the matter except to claim that the one given was sufficient, when, about the last of February, the defendants told the plaintiffs that the contract was at end, and they could not have the rooms. The building was finished in July, when the portion which the plaintiffs were to have was leased to a third person for something less than they were to pay for it. Upon these facts the first point made by counsel for defendants is that the sum named in the agreement as liquidated damages, to be paid by them for a failure to furnish and lease the rooms, is, notwithstanding such designation, only a penalty, and therefore can only be recovered so far as the proof shows the plaintiffs to have been injured by such failure.

Upon this subject the law is peculiar, and, instead of giving effect to the contract of the parties according to their intentions, it assumes to control them according to its standard of justice.

And (1) whenever it is at all doubtful whether the sum mentioned was intended as stipulated damages or a penalty to cover actual damages, the law, which always favors the latter as against the former, declares that the sum was intended as a penalty; (2) when the con-

tract is explicit that the sum named shall be considered as liquidated damages, the contract is to be enforced according to its terms, unless qualified by some other circumstance, as when one agrees to pay a larger sum upon the failure to pay a smaller one, or when the damages resulting from a failure to perform the contract are certain, or can be reasonably ascertained by a jury. But whenever the contract is for the doing or not doing a particular act or acts, and there is no certain pecuniary standard by which to measure the damages resulting from a breach thereof, an agreement to pay a stipulated sum as damages for such breach will be enforced literally. 1 Am. Dec. 335; Sedg. Dam. 399.

This case falls exactly within the last category. The contract provides that for a failure to furnish the rooms and lease the defendants shall pay $2,000 as liquidated damages. The rooms were wanted for the clothing business, in the business part of the city, for a term of five years. It would be impossible to say what damage the plaintiffs might suffer from a breach of this contract, without, at least, waiting until the end of the five years, and that would be equivalent to a denial of any. The damage might have been merely nominal or it might have been very large, depending upon circumstances uncertain and contingent in their character. Situated thus, the parties having taken the precaution to agree upon the amount of damages to be recovered for a violation of their contract in this particular, the law, it seems to me, would hinder rather than promote the administration of justice by refusing to enforce it accordingly.

But counsel for defendants insist that there never was any breach of this contract by the defendants, because they were not bound to do anything under it until the plaintiffs had furnished a satisfactory bond for the rent, which was not done.

It is admitted that the defendants could not arbitrarily, and without some substantial reason, refuse to receive a bond tendered them under this agreement. But the bond was to be to their "satisfaction," and if, in the exercise of their judgments, acting upon the best information conveniently within their reach, they in good faith concluded that the bond was not sufficient, why, then, the plaintiffs were bound by their action. And there is no presumption against the integrity of the defendants' conduct in the premises, but the contrary. If the plaintiffs claim that the refusal to accept the bond was unjustifiable, they must show it.

The defendants had a right to a bond to their satisfaction, not only because that was the express agreement, but for the reason that in

the very nature of the case it was right and just that they should. They were about to erect a costly building—possibly with borrowed money—relying upon this bond as a good security to them for $1,800 a year towards the accomplishment of this enterprise for the next five years. Under such circumstances I think the law would say, in the absence of any agreement to the contrary, that the security should be good beyond a reasonable doubt.

The plaintiffs have offered no evidence as to the responsibility of the sureties on this bond. But upon it is the justification of each of them to the effect that he is worth $2,000 over all debts and liabilities, and property exempt from execution. On the other hand, defendants have introduced evidence which shows that for the year 1877–78 the real property of Harris was only valued for taxation at $1,800, and that of Friedman at $2,480, upon the most if not all of which there are homesteads; that if they have any personal property it is employed in some retail business in which they are engaged, and that they returned no such property for taxation during the year aforesaid. It being manifest that a bond with such sureties, living, too, in another state, would not be good, if any, security for the payment in Portland of $1,800 a year for five years, counsel for the plaintiffs are driven to rest their case upon the proposition that by the terms of the agreement they were not bound to give a bond with any sureties, and that they complied with their contract when they tendered the defendant their own bond in the sum agreed upon, executed in due form of law.

It may be admitted that if the agreement was that the plaintiffs were only to give a bond executed by themselves, then the bond tendered was a "good and sufficient" one, because it was executed by them in due form of law, in the sum and upon the conditions specified in the agreement. In *Aiken* v. *Sandford*, 5 Mass. 499; *Tinney* v. *Ashley*, 15 Pick. 552; *Van Eps* v. *Corporation, etc.*, 12 Johns. 342; and *Gazley* v. *Price*, 10 Johns. 268, it was held that a bond on condition that the obligor would make and deliver to the obligee a good and sufficient deed to a certain parcel of land, was satisfied by the execution of a deed in due form of law to pass whatever title the the obligor might have.

And it must be admitted that upon the mere letter of this agreement it may be said that nothing more is required than the bond of the plaintiffs. The language of the instrument is "that they [the plaintiffs] further agree to make, execute, and deliver to the said par-

ties of the first part a good and sufficient and approved bond in the sum of $2,000, conditioned," etc.

But the cases are not parallel. A covenant that A. will make a good and sufficient deed to a certain property is performed by the execution of a deed by him in due form of law. There are no sureties in a conveyance. But a bond on condition is more often made with sureties than otherwise, because it is usually intended as a guaranty for the performance of some act by the principal obligor; and therefore a covenant that A. will give a bond to the satisfaction of B. for the payment of money which A. is already otherwise bound to pay, does not appear to be satisfied with the bond of A. without sureties.

And it is very certain that it was not the understanding of the parties to the agreement, at the date of its execution and afterwards, that the bond of the plaintiffs was all that was required.

In the construction of this contract the court may consider the circumstances under which it was made, and the situation of the subject of it and the parties thereto, and they all point to the conclusion that the parties contemplated that the plaintiffs were to give satisfactory security for the payment of the rent.

It is not pretended that the plaintiffs are persons of any considerable means or financial ability. They appear to have been engaged in this city in a small clothing business, in the old wooden house that was removed to make room for this building; and it is not likely that the defendants would incur the risk of erecting a costly building upon the faith of their unsecured promise to pay the rent for the principal portion of it for a period of five years. Besides, there was no necessity for the plaintiffs giving their bond merely for the payment of the rent, for they were already bound by the agreement to take the rooms and pay the rent, and, upon the acceptance of the lease, they would continue to be so bound by that instrument. Nor, under the circumstances, does the agreement of the plaintiffs "to make, execute, and deliver" a bond—not their bond—necessarily imply that such bond shall be executed by the plaintiffs alone, or even at all. The only possible reason for giving or taking a bond was that the defendants might have security for the payment of the rent, which necessarily means something more than the promise to pay it; for that they already had.

My conclusion is that the agreement should be construed as requiring the plaintiffs to furnish, on or about February 1, 1878, a good and sufficient bond, executed by themselves and others, or by others

alone, which would be recognized by the business community as at least reasonable security for the payment of $1,800 a year for the period of five years.

In addition to these considerations, the evidence shows that the plaintiffs understood that the agreement required them to furnish a bond with sureties, and they acted accordingly.

At the time of the execution of the agreement, the subject of sureties on the bond seems to have been spoken of, when Harris, who appears to reside in San Francisco, said he did not expect to give certain persons, naming some well-known capitalists there, but that he had friends worth $25,000 who would go on the bond.

The bond tendered was executed with sureties, and when it was refused, on the ground of their insufficiency, no suggestion was made that the plaintiffs were not required to furnish a bond with sureties.

On the whole, it is clear that the plaintiffs, having failed to perform the condition precedent, by tendering the defendants a bond within the time required that was a reasonable security for the payment of the rent, the contract for the lease was at an end, and the plaintiffs are not entitled to recover the damages stipulated for withholding the same.

There must be findings and judgment for the defendants accordingly.