### GAY MANUF'G CO. v. CAMP.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

#### No. 106.

1. PRACTICE—EFFECT OF FINDINGS OF MASTER—APPEAL.
    The findings of a master or commissioner on matters of fact referred to him are prima facie correct, and, when sustained by the circuit court,

should not be overruled in the appellate court, unless they are without testimony to support them, or the preponderance of evidence is greatly against them.

2. CONTRACTS—LIQUIDATED DAMAGES—PENALTY.

Receivers of an insolvent corporation made a lease of certain timber and mill property, under direction of the court, to C. and others, which provided that, if it should be terminated before the date set for its expiration, for any default of the lessees, the damage suffered by the lessors, in addition to unpaid rent and unpaid purchase money for timber, in the interruption of earnings, necessity of seeking new lessees, possible lower rent, etc., should be fixed at $5,000, agreed on as liquidated damages. The lease was terminated a few days before the expiration of the term, for default of the lessee. All rent was subsequently paid, and a special master found that no damage beyond the deferred rent had been suffered by the lessors. *Held* that, in view of these facts and the terms of the lease, the provision for $5,000 damages must be held to be a penalty, and not liquidated damages.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This was an appeal from an order of the circuit court overruling exceptions and confirming the report of a special commissioner, to whom was referred the petition of William N. Camp and others for the payment to them of certain moneys by the receivers of the Gay Manufacturing Company.

A. H. Taylor, for appellant.

Robert R. Prentiss, for appellee.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. The property of the Gay Manufacturing Company, a body corporate of the state of Virginia, was placed in the hands of receivers by a decree of the circuit court of the United States for the Eastern district of Virginia. By the permission and order of the court, these receivers entered into a contract with William N. Camp, P. D. Camp, and James L. Camp on 2d September, 1889, whereby the latter were let in as lessees of certain mill property at Suffolk, Va., a part of the estate in the hands of the receivers, for a term of two years, at $10,000 per annum. During their tenancy the lessees removed some parts of the machinery and substituted others, put on the premises extra machinery, and made some additions, not, however, attached to the freehold. The annual rental, as we have seen, was fixed at $10,000, and several covenants were entered into between the parties. Two of these are essential to the understanding of this case,—the fifth and seventh. The fifth will be hereafter discussed. The seventh is in these words:

"Seventh. Said parties of the second part agree to operate said mill and machinery in a workmanlike and careful manner, and to keep said mill, machinery, equipments, and tools so as aforesaid leased to them in running order, good condition and repair, replacing such parts as may became worn out and unfit for use, and to restore the same to the party of the first part at the end of this term in the same condition in which it is received, necessary wear and tear excepted; and the damages for the breach or nonperformance of this clause shall be independent of, and in addition to, damage for other causes herein mentioned."

The fourth clause having provided for the annulling and termination of the contract on breach of condition by the lessees, the receivers applied to the circuit court on 25th July, 1891, by petition setting forth the lease and its covenants, and charging the breach thereof by the Camps by the nonpayment of rent and purchase money of timber and lumber sold, and praying the authority of the court to annul the lease, and re-enter and take possession, as in its terms provided. To this petition the Camps appeared, and answered. The answer admitted the allegations of the petition, the existence of the default alleged therein, and submitted the respondents to the action of the court. Thereupon the court directed the receivers to proceed in all respects in accordance with the lease, to enter upon and take into their possession the property of the Gay Manufacturing Company leased to the Camps, to take possession of lumber, the property of the Camps, found there, and also the lumber of C. B. Leet & Co., with whom the receivers had a contract for the sale of certain lumber, and to sell the same to satisfy the sum due them, and to bring any lawful action or other lawful proceeding against the Camps or C. B. Leet & Co. to recover the balances due by them to the Gay Manufacturing Company. Under this order the receivers entered, ousted the Camps and took possession, and collected the rent due, and the purchase money for the timber and lumber. W. N. Camp, who was really the only party in interest, the others having disclaimed on the record, informed the receivers that there was on these premises personal property belonging to him, and asked leave to remove it. The receivers declined to grant this permission, except under an order of the court. Neither Camp nor the receivers asked for such an order, and the property remained on the premises, and was, and continued to be, used by the receivers. W. N. Camp then filed his petition in the circuit court, alleging that he had left on the premises certain machinery and other personal property of the value of $2,776.19, set out in an exhibit to the petition; that this property was necessary and convenient for the successful operation of the mill, and that it was mutually understood that the receivers were to pay him the value of the same; that the receivers took possession of it, and have ever since used it in the business and conduct of the mill. The prayer is that they be ordered to pay him that sum, with interest. This petition was presented to the circuit court, and an order was passed granting leave to file it, and referring it and the questions raised thereby to Lee Britt, Esq., as special commissioner, directing him to inquire as to the facts stated in the petition, and report to the court what amount of money, if any, is due to the said William N. Camp by reason of the facts stated in the petition, together with any other matter specially stated deemed pertinent by the commissioner, or required by any of the parties to be so stated. Notice of references was required to be given only to the counsel of the respective parties. This order was wholly ex parte. No answer was ever required or filed to the petition. The counsel for both parties, however, appeared before the commissioner, and the record discloses no protest or objection to his going on with the references or taking

testimony. It is too late now to object either to the·order of reference or to the fact that the commissioner acted under it. City of Memphis v. Brown, 20 Wall. 289. The commissioner took the testimony offered by the parties, and made his report in writing. He finds the facts in favor of the claim of the petitioner for machinery and other property left by Camp in the mill, necessary and convenient to its successful operation, of which receivers took possession and have since used, and recommends that the receivers be ordered to pay for the same at its just value,—$2,776.19,—with interest from 2d September, 1892. Evidently he acted upon the theory that the receivers had converted the property to their own use, and that Camp, waiving the tort, could recover on the implied assumpsit. He disallows the claim of the receivers against W. N. Camp for repairs to the mill and machinery which they were compelled to make on taking possession, holding that Camp had returned the property as he had received it, necessary wear and tear excepted. He also disallows for the same reason a claim of $790, made by receivers against Camp for repairs they made on a locomotive called "Brooks"; and finds against them on a claim made by them, based on the allegations that Camp had not cut the quantity of lumber he had contracted to cut, holding that this was their fault in not furnishing the timber. These findings of the commissioner were excepted to, and, with the exceptions, were heard by the court below, and the commissioner's findings were·affirmed. They will be disposed of before coming to another and more important exception.

The finding of a master or commissioner on matters of fact referred to him are prima facie correct. Medsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351. When they are sustained by the circuit court, they should not be overruled, unless they are without testimony to support them, or the preponderance of the evidence is greatly against his conclusion. Bridges v. Sheldon, 18 Blatchf. 507, 7 Fed. 17. In this case, reviewing the testimony in the record, we cannot say, that his finding "that Camp left upon the premises personal property, and machinery necessary and convenient for the use of the mill, and that the receivers took possession and continued to use the same," is not supported by evidence, or that it is overcome by the preponderance of the evidence. The receivers knew that Camp claimed the property, and that he had demanded its delivery. They very properly would not act without an order of the court. But they need not have used the property.

Another and much more difficult question arises upon an exception to the report of the commissioner that he had not allowed the receivers $5,000, provided in the lease as liquidated damages in case its provisions, or any of them, be violated, and the lessors thereupon resume possession. No mention whatever is made of this question in the report of the commissioner. Nor does the record disclose the fact that any exception was taken before him because of his failure to notice it. The only mention of this matter of liquidated damages is in the testimony of Mr. Taylor, who says that he had given notice to W. N. Camp of the claim. The commissioner mentions in detail sums of money claimed by the receivers as

breaches of the lease, and claimed by them as a set-off against Camp's demand. He says nothing as to the liquidated damages. "Under correct chancery practice, no exception to a master's report can be heard by the court which was not taken before the master, so that he can reconsider his decision." Story v. Livingstone, 13 Pet. 359; McMicken v. Perrin, 18 How. 510. This was not insisted upon, however. Hatch v. Railroad Co., 9 Fed. 856. Mr. Justice Bradley in Gaines v. New Orleans, 1 Woods, 104, Fed. Cas. No. 5,177, called attention to the rule, but did not enforce it in that case, as it had escaped counsel on both sides. He, however, gave notice that it would be enforced thereafter. In the case at bar the judge below simply confirmed the report of the commissioner, giving no reasons. The appellee raises the question of its consideration here. In our opinion, the proper practice should have been followed. But to prevent further litigation it may be best to express an opinion on the question now. The fifth clause of the lease is as follows:

"And it is particularly agreed between the parties hereto that whenever upon the termination of this contract at any time before the date herein set for the expiration hereof, by reason of the breach or nonperformance of any of its terms or conditions by said parties of the second part, whereas, besides the rent accrued and unpaid, and the unpaid purchase money of the timber cut, for which the parties of the second part would be liable to said party of the first part, it is contemplated and expected that further loss and damage would be suffered by said party of the first part by reason of the interruption of the earnings and operations of said party of the first part, and the contemplated possibility of having to seek other lessees or operators in the place of said parties of the second part, and possibly or probably the necessity of accepting a less rental for its mills, or less prices for its timber than are fixed by the terms hereof, and by reason of all the contemplated uncertainties and disadvantages of the situation in which said party of the first part would be placed in such event, loss would be incurred by said party of the first part, which loss or damage or disadvantage it would be difficult to estimate or determine with accuracy, therefore, in lieu of all such claim for loss or damage, the sum of five thousand dollars is now hereby estimated, assessed, and accepted between the parties hereto as liquidated damages to be paid by the parties of the second part unto the party of the first part, which the parties of the second part hereby declare to be due, and promise and bind themselves to pay, unto said party of the first part, or its assigns, immediately upon the termination or annullment or declaration of the termination or annullment of this contract by the party of the first part for any of the causes or reasons herein set out for which said contract is to be terminated and annulled, in addition, as aforesaid, to the sums due and to be paid for rent and as the price of the timber cut; and, as aforesaid, a lien shall be had and exercised by said party of the first part for such liquidated damages on said accounts in the manner and form hereinbefore mentioned upon the timber cut by said parties of the second part, to be appropriated and taken by said party of the first part as above mentioned."

The lease was for two years from 2d September, 1889, at $10,000 per annum. On 25th July, 1892, there was due and unpaid for 15 days the rent for one month, due July 2, 1892, and some money for lumber,—in all $2,529.43; and on this default the lessors entered. Subsequently, it is to be presumed, from no claim having been made for it before the commissioner, they received the whole rent due to 2d September, 1892, and this is stated to be a fact in appellee's brief. When before the commissioner, they set up claims for other breaches of the lease, which were disallowed. So, the only breach of the

lease—the nonpayment of rent—having been satisfied by payment, are the lessors entitled to the payment of $5,000 as liquidated damages under these circumstances? This will depend upon the question, is this sum of $5,000 inserted as a penalty or as liquidated damages? "Upon this subject," says Deady, J., in Harris v. Miller, 6 Sawy. 319, 11 Fed. 118, "the law is peculiar, and, instead of giving effect to the contract of the parties according to their intentions, it assumes to control them according to its standard of justice." In Spencer v. Tilden, 5 Cow. 150, the court says:

"This doctrine, which converts damages apparently stipulated or fixed by the parties into a penalty, came from the civil law, through the court of chancery, and has at length obtained a firm hold in the courts of common law. It is obvious that, in order to enforce it, courts must disregard the particular expressions of the parties; for, the moment we agree that a party may, by calling a real penalty liquidated damages, or throwing it in the form of an alternative in a contract, or substituting its payment for some specified default, secure the whole to himself, without regard to the real damages, we bring back the oppressive rule of the common law. The griping creditor will always use the particular form or phraseology of contract which will secure him his pound of flesh, unless the courts interfere in all cases, and tell him that, from the very nature and essence of his bond, whatever he claims, and in whatever shape or upon whatever footing, if it be in truth plainly beyond the legal amount of damages, so far it shall be no more than nominal."

The rule laid down in Barton v. Glover, Holt, N. P. 43, is:

"When a sum of money, whether in the name of a penalty or otherwise, is introduced in a covenant or agreement merely to secure the enjoyment of a collateral object, the enjoyment of the object is considered the principal intent of the deed or contract, and the penalty as the accessory, and therefore only to secure the damages really incurred."

The fact that the parties speak of it as liquidated damages is not conclusive. Lampman v. Cochran, 16 N. Y. 275. The doctrine is well stated by Sanford, J., in Bagley v. Peddie, 5 Sandf. 192:

"Where it is doubtful on the face of the instrument whether the sum mentioned was intended to be stipulated damages or a penalty to cover actual damages, the courts hold it to be the latter. (2) On the contrary, where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages, however extravagant it may appear, unless the instrument be qualified by some of the circumstances hereafter mentioned. (3) If the instrument provide that a larger sum shall be paid on the failure of the party to pay a less sum, in the manner prescribed, the larger is a penalty, whatever may be the language used in describing it. (4) When the covenant is for the performance of a single act or acts, which are not measurable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a violation of any such covenants, that sum is to be deemed liquidated damages, and not a penalty. (5) Where the agreement secures the performance or omission of various acts of the kind mentioned in the last proposition, together with one or more acts in respect to which the damages on a breach of the covenant are certain or readily ascertainable by a jury, and there is a sum stipulated as damages to be paid by each party to the other for a breach of any one of the covenants, such sum is held to be a penalty merely."

The principle derived from this quotation is that the circumstances of each case determine whether the sum stated be liquidated damages or a penalty; and this without regard to the words used, perhaps sometimes in disregard of the intent of the parties. And whenever it appears that the damages occasioned are easily esti-

mated in money, the covenant is construed as a penalty. A fortiori is this construction applied to a case like the present, when the only breach established is the nonpayment of rent within the stipulated period, accompanied by proof that the rent then due and all rent subsequently accruing has been paid to the lessors, and accepted by them. "The subject-matter of the contract and the intention of the parties are the controlling guides. If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will incline to give the relief which the parties have agreed to. But if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term 'liquidated damages,' will not prevent the court from inquiring into the actual injury sustained, and doing justice between the parties." 2 Sedg. Dam. 215 (399, 400); 1 Pom. Eq. Jur. §§ 433, 444.

In this case, the order of court authorizing the receivers to reenter and take possession of the leased property was passed on 25th July, 1891. The lease, by its terms, expired September 2, 1891. It therefore had only 38 days to run. It does not appear on what day the receivers actually took possession, but it is quite impossible that any substantial damage could have resulted from the annulling of the lease a few days before the expiration of its term, and the exaction of a penalty of $5,000 as the consequence of such a default would be grossly excessive and inequitable. The judgment of the circuit court is affirmed, with costs.