UNITED STATES v. ALCORN et al.

(Circuit Court, W. D. Missouri, Central Division. May 25, 1906.)

No. 2,299.

1. POST OFFICE—BOND OF BIDDER FOR MAIL CONTRACT—NATURE OF OBLIGATION.

A proposal bond, given by a bidder for a contract for carrying the mail, conditioned as required by Act June 23, 1874, c. 456, § 12, 18 Stat. 235 [U. S. Comp. St. 1901, p. 2695], which provides that "every proposal for carrying the mail shall be accompanied by the bond of the bidder, * * * and in case of failure of any bidder to enter into such a contract to perform the service, or, having executed a contract, in case of failure to perform the service according to his contract, he and his sureties shall be liable for the amount of said bond as liquidated damages, to be recovered in an action of debt in said bond," is an absolute undertaking to pay the amount named therein as liquidated damages in case of condition broken, and not one of indemnity or security to the government against loss or damages for breach of contract, and in an action thereon the actual damages cannot be inquired into.

2. SAME—ACTION ON PROPOSAL BOND—DEFENSES.

In an action on a proposal bond given by a bidder for a contract for carrying the mail, as required by Act June 23, 1874, c. 456, § 12, 18 Stat. 235 [U. S. Comp. St. 1901, p. 2695], where the bidder entered into the contract with the required surety for its faithful performance, but failed to complete such performance, the fact that the government recovered from such surety the actual damages sustained by reason of the breach of contract does not constitute a defense

On Demurrer to Answer.

A. S. Van Valkenburgh, Dist. Atty., for the United State'
Montgomery & Montgomery, for defendants.

POLLOCK, District Judge. This is an action at law. The petition contains seven counts. The basis of each cause of action is a bond made by defendants, Alcorn as principal and the Deckers as sureties, to the government, under the provisions of an act of Congress approved June 23, 1874, c. 456, § 12, 18 Stat. 235 [U. S. Comp, St. 1901, p. 2695], which reads as follows:

"That every proposal for carrying the mail shall be accompanied by the bond of the bidder, with sureties approved by a postmaster and in cases where the amount of the bond exceeds five thousand dollars, by a postmaster of the first, second, or third class, in a sum to be designated by the Postmaster General in the advertisement of each route; to which bond a condition shall be annexed, that if the said bidder shall, within such time after his bid is accepted as the Postmaster General shall prescribe, enter into a contract with the United States of America, with good and sufficient sureties, to be approved by the Postmaster General, to perform the service proposed in his said bid, and further, that he shall perform the said service according to his contract, then the said obligation to be void, otherwise to be in full force and obligation in law; and in case of failure of any bidder to enter into such contract to perform the service, or, having executed a contract, in case of failure to perform the service according to this contract, he and his sureties shall be liable for the amount of said bond as liquidated damages, to be recovered in an action of debt on said bond. No proposal shall be considered unless it shall be accompanied by such bond, and there shall have been affixed to said proposal the oath of the bidder, taken before an officer qualified to administer oaths,

that he has the ability, pecuniarily, to fulfill his obligations and that the bid is made in good faith, and with the intention to enter into contract and perform the service in case his bid is accepted."

The facts in relation to the present controversy and the manner in which it arises for decision are: On the 19th day of November, 1897, defendant Alcorn, in response to an advertisement of the Postmaster General of the United States, made a proposal to carry the government mails on route No. 52,293 from Wewoka to Arbeka, in the Indian Territory, from July 1, 1898, to June 30, 1902, for a consideration of $307 per annum, in the form and manner prescribed by the post office department of the government, and transmitted with such proposal to the Postmaster General his proposal bond in the following form, to wit:

"Know all men by these presents, that James P. Alcorn, of Sedalia, in the state of Missouri, principal, Jay H. Decker and Lizzie Decker. of Sedalia, in the state of Missouri, as sureties, are held and firmly bound unto the United States of America in the just and full sum of fourteen hundred dollars, lawful money of the United States, to be paid to the said United States of America, or its duly appointed or authorized officer or officers, to the payment of which, well and truly to be made and done, we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals, and dated this nineteenth day of November, 1897.

"Whereas, by an act of Congress approved June 23, 1874, entitled, 'An act making appropriations for the service of the Post Office Department for the fiscal year ending June thirtieth, eighteen hundred and seventy-five, and for other purposes,' it is provided: 'That every proposal for carrying the mail shall be accompanied by the bond of the bidder, with sureties approved by a postmaster,' in pursuance whereof and in compliance with the provisions of said law. This bond is made and executed, subject to all the terms, conditions, and remedies thereon in the said act provided and prescribed, to accompany the aforegoing and annexed proposal of the said James P. Alcorn, bidder. Now, the condition of said obligation is such that. if the said bidder, as aforesaid, shall, within such time after his bid is accepted as the Postmaster General has prescribed in said advertisement, to wit, within sixty days from the date of acceptance of the bid, enter into a contract with the United States of America, with good and sufficient sureties, to be approved by the Postmaster General, to perform the service proposed in his said bid, and further shall perform said service according to his contract, then this obligation shall be void; otherwise, to be in full force and obligation in law.

"In witness whereof, we have hereto set our hands and seals this nineteenth day of November, 1897.

"Witnesses:                              James P. Alcorn   (Seal)
    "F. L. Hensinger,                     Jay H. Decker    (Seal)
    "D. M. Sneed.                         Lizzie Decker    (Seal)"

This proposal and bond were duly accepted by the Postmaster General of the United States on the 1st day of February, 1898, and Alcorn did on that date, in accordance with the terms of such proposal bond, and in accordance with the laws of the United States in that behalf made, enter into a contract in writing with the government to carry the mails, according to the terms of his proposal, for the annual consideration therein expressed, and caused such contract to be executed by a certain corporation known as the American Bond & Trust Company of Baltimore, Md. (hereinafter called the "Bonding Company"), to execute such contract as surety for his faithful performance of the same. Thereafter, defendant Alcorn entered upon

the performance of the public service undertaken by him with the government, but failed to complete the same according to his contract, but on the contrary made default therein, by reason of which his contract was breached, to the actual damage of the government in the sum of $336.57, for which amount the government did, on the 23d day of May, 1903, bring an action at law against said corporation, the Bonding Company, in the Circuit Court of the United States for the District of Maryland, in which action the government had judgment for the full amount of the actual damages claimed by it, which judgment was fully paid and satisfied by the Bonding Company. Thereafter, on the 7th day of June, 1905, the government instituted this present action in this court to recover the amount named in the proposal bond, to wit, $1,400, less the sum paid by the Bonding Company in satisfaction of said judgment, $336.57, as liquidated damages. This cause of action constitutes the first count in the petition of plaintiff.

To this cause of action the defendants have answered, admitting the making of the proposal bond, the contract for the carrying of the mails, and the breach of such contract, all as alleged by the plaintiff, but pleads the bringing of the action by the government against the Bonding Company in the Circuit Court of the United States for the District of Maryland, the judgment entered thereon in favor of the government for the actual damages accruing to it by reason of the breach of said contract, and the payment and satisfaction of such judgment as a complete defense and in bar of the prosecution of this action on the proposal bond. To this answer the government demurs.

The remaining six counts of the petition are based on like proposal bonds for the different amounts therein stated (less payments received in satisfaction of former judgments against the Bonding Company in the same manner as heretofore specified) as liquidated damages, to which counts like answers have been put in, against which answers a demurrer has been lodged by the government. Hence, a decision of the demurrer to the answer made to the first count in the petition binds and concludes as to all.

The demurrer thus interposed raises two questions for decision: First. In the absence of the action by the government against the Bonding Company, might the government have maintained an action against these defendants for the full amount stated in the proposal bond, and recovered judgment for the same as liquidated damages, regardless of the extent of the actual damages accruing to the government by reason of the breach of the contract made in pursuance of said bond? Second. If so, is the judgment against the Bonding Company as surety on the contract made by Alcorn for the carrying of the mails in pursuance of the terms of his proposal bond, and the satisfaction of such judgments by the Bonding Company, a defense to this action against the principal and sureties executing the proposal bond for the amount specified in said bond as liquidated damages? And of these questions in their order.

First, looking to the extent of the recovery against defendants in this action on the proposal bond in suit, it may be observed, both

by virtue of the law of their existence and by direct reference to the law in the bonds, the above-quoted act became as much a part of the obligation as though set forth in extenso. The bond, therefore, in express terms, provides if the principal obligor shall breach the one important stipulation therein written, "he and his sureties shall be liable for the amount of said bond as liquidated damages to be recovered in an action of debt on said bond." This stipulation is "that he [the bidder] shall perform the said service according to his contract." This stipulation, it is admitted by defendants in this action in their answer, was not performed by the bidder, Alcorn, but was breached. What, then, is the extent of the recovery against defendants, as principal and sureties on the proposal bond, had the action not been brought and judgment obtained against and paid by the surety on the contract? Is such recovery limited to the actual damages which accrue to the government by the failure to perform the stipulation? If so, such damages have been, by action and judgment against the surety on the contract itself, recovered and paid; hence, of necessity, this action for a second recovery will not lie, there having been one recovery and satisfaction thereof. The solution of this problem must depend upon the general principles of law as determined and applied in the federal court, and upon such statutory enactments as may be applicable thereto; for, if the proposal bond in suit is not to be in the light of security or indemnity to the government against actual damages or loss accruing to it from a breach of the bidder, or stipulation to perform the service, but in the light of an absolute undertaking to pay the government the amount named in the bond by way of an agreed compensation for an unascertained and uncertain loss that might accrue to the government in case of breach of the stipulation by the bidder, then it is quite clear, the parties having dealt at arm's length and having possessed full power to so contract, no inquiry will be had as to the extent of the damages actually flowing from the breach, but, upon the breach of the stipulation being shown, judgment must go, of course, for the amount named in the bond, unless the general principles of law in this regard are found to have been modified or changed by statute. At the common law, prior to the statute of 8 & 9 William III (chapter II), no inquiry into any case was permitted in a court of law as to the extent of the damages arising from a breach of the bond, but, upon such breach being shown, judgment went for the full penalty of the bond. Equity, however, would grant relief in case the amount named was not in the nature of liquidated damages. Watts v. Camors, 115 U. S. 353, 6 Sup. Ct. 91, 29 L. Ed. 406. This being the rule in equity, it has become the practice of courts of law, following the rule in equity, to regard the amount stipulated in the bond to be compensatory, unless the contrary clearly appears. It is not thought, however, from a consideration of the adjudicated cases bearing upon this question, that the federal courts, sitting either in equity or at law, have granted relief against, or refused to award judgment for, the full amount of the bond, where it clearly appears the amount fixed in the bond was agreed to by parties fully capable of contracting, as liquidated damages in case of breach of condition. This will fully

appear from the able and extended review of the authorities, both English and American, by Mr. Justice White in Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366.

Section 961, Rev. St. U. S. [Comp. St. 1901, p. 699], provides:

"In all suits brought to recover the forfeiture annexed to any article of agreement, covenant, bond or other specialty, where the forfeiture, breach or non-performance appeared by the default or confession of the defendant, or upon demurrer, the court shall render judgment for the plaintiff to recover so much as is due according to equity, and when the sum for which judgment should be rendered is uncertain, it shall if either of the parties request it, be assessed by a jury."

The Circuit Court of Appeals for the Seventh Circuit, in Chicago House Wrecking Co. v. U. S., 106 Fed. 385, 45 C. C. A. 343, 53 L. R. A. 122, in giving effect to this statutory provision in an action at law on a bond in which the amount stated was quite clearly liquidated damages, held only actual damages might be recovered. The Circuit Court of Appeals for the Fourth Circuit in Gay Manuf'g Co. v. Camp, 65 Fed. 794, 13 C. C. A. 137, in a suit in equity granted relief against the enforcement of a demand for liquidated damages apparently solely on the ground of the principles of equity, and without regard to the statute. This ruling was reaffirmed by that court in the same case (68 Fed. 67, 15 C. C. A. 226). However, Mr. Justice White in Sun Printing & Publishing Ass'n v. Moore, supra, of this case said:

"Indeed, the contention but imbodies the conception of the doctrine of penalty and liquidated damages expressed in the reasoning of the opinions in Chicago House Wrecking Co. v. U. S., 106 Fed. 385, 45 C. C. A. 343, 53 L. R. A. 122, and Gay Manuf'g Co. v. Camp. 65 Fed. 794, 13 C. C. A. 137; Id., 68 Fed. 67, 15 C. C. A. 226, viz.: 'That where actual damages can be assessed from testimony, the court must disregard any stipulation fixing the amount, and require proof of the damage sustained.' We think the asserted doctrine is wrong in principle, was unknown to be common law, does not prevail in the courts of England at the present time, and it is not sanctioned by the decisions of this court."

Therefore, notwithstanding the above statutory provision, the sole question for decision here is, does it appear from the bond itself, the law of its existence incorporated in the bond, and with general principles of the law as declared by the Supreme Court. that the amount stated in the bond was intended by the parties as liquidated damages? If so, the extent of recovery is the amount stated in the bond. I am of the opinion the amount stated in the bond was inserted by the parties as liquidated damages, to be recovered as such in case of the breach of the stipulation to perform the service by the bidder; that the bond was not given or received as security or indemnity to the government for the actual loss it might sustain by reason of the breach of such stipulation; and that all inquiry as to actual damages sustained in an action on this bond must and should be excluded, and this for the following reasons: First, as has been seen, the bond itself in express terms denominated the amount stated therein as liquidated damages. True, this fact is not conclusive evidence of the nature of the penalty fixed in the bond. Lampman v. Cochran, 16 N. Y. 275. But Mr. Justice White in Sun Printing & Publishing Ass'n, supra, quoting with approval from

the opinion of Mr. Justice Patterson in Price v. Green, 16 M. & W. 346, says:

"The five thousand pounds is expressly declared by the covenant to be as and by way of liquidated damages, and not of penalty.' It is a sum named in respect to the breach of this one covenant only, and the intention of the parties is clear and unequivocal. The courts have, indeed, held that in some cases the words 'liquidated damages' are not to be taken according to their obvious meaning, but those cases are all where the doing or omitting to do several things of various degrees of importance is secured by the sum named, and, notwithstanding the language used, it is plain from the whole instrument that the intention was different."

In Bagley v. Peddie, 5 Sandf. (N. Y.) 192, Sanford, J., delivering the opinion of the court, says:

"Where it is doubtful on the face of the instrument whether the sum mentioned was intended to be stipulated damages or a penalty to recover actual damages, the courts hold it to be the latter. (2) On the contrary, where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages, however extravagant it may appear, unless the instrument be qualified by some of the circumstances hereafter mentioned. These qualifying conditions are: (3) If the instrument provide that a large sum shall be paid on the failure of the party to pay a less sum, in the manner prescribed, the larger is the penalty, whatever may be the language used in describing it. (4) When the covenant is for the performance of a single act or acts which are not measureable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a violation of any such covenants, that sum is to be deemed liquidated damages, and not a penalty. (5) Where the agreement secures the performance or omission of various acts of the kind mentioned in the last proposition, together with one or more acts in respect to which the damages on a breach of the covenant are certain or readily ascertainable by a jury, and there is a sum stipulated as damages to be paid by each party to the other for a breach of any one of the covenants, such sum is held to be a penalty merely."

In the case at bar the effect of the other provisions of the instrument and other considerations not only fails to qualify the express stipulation for liquidated damages, but in a large measure emphasizes the fact that it was the intention of the parties the amount stated in the bond should be regarded alone as liquidated damages; for the very terms of the bond itself not only provide for the absolute payment of the amount stated on breach of the principal stipulation therein written, the resultant breach of such damages to the government being uncertain, and at the time of the making of the bond unascertainable, but this sum is to be recovered "in an action of debt on said bond."

Now it is quite clear the law-making power in the enactment of this statute employed the phrase "action for debt" in its common-law acceptation. The distinguishing and fundamental feature of such action consists in the fact that it lies only for the recovery of money or its equivalent in sum certain, or that can be readily rendered certain by mathematical computation; and, conversely, upon an action of debt will not lie to recover damages for breach of contract unless such damages have been fixed and liquidated by the prior agreement or judgment between the parties. Raborg et al. v. Peyton, 2 Wheat. 385, 4 L. Ed. 268; Mills v. Scott, 99

U. S. 25, 25 L. Ed. 294; Stockwell v. U. S., 13 Wall. 531, 20 L. Ed. 491.

In David Fry v. William Slyfield, 3 Vt. 246, Chief Justice Hutchison, delivering the opinion of the court, in speaking in an action of book debt, said:

"We may safely go so far as to say that a mere claim for damages for any tortious act or neglect, or for any breach of contract, cannot be recovered in this action."

Hence, it must be thought it was the intent of the law-making power, in the enactment of the statute under which the proposal bonds in question were given, not only to designate the form of action appropriate for the collection of the penalty of the bond, but, by the very form of action directed to be employed for such purpose, to place beyond all question the character of the instrument, and to render the amount stipulated in the bonds, not security or indemnity to the government for actual damages flowing from a breach of conditions imposed on the bidder, but as liquidated damages, for only as such could a recovery be had in an action of debt.

Again, prior enactments afford a legislative construction of the act in question. The statute now in force supersedes former section 3915 Rev. St. This act provided:

"Every proposal for carrying the mail shall be accompanied by a written guarantee, signed by one or more responsible persons, and undertaking that within such time after the bid is accepted as the Postmaster General may prescribe the bidder will enter into an obligation with good and sufficient sureties to perform the service proposed, and no proposals shall be considered unless accompanied by such guarantee."

Section 3916, now superseded by the present legislation, provided for the oath of the bidder as follows:

"That he believes the guarantors pecuniary responsible for and able to pay all damages the United States shall suffer by reason of the bidder's failure to perform his obligation as such bidder."

The present law requires an oath from the sureties on the proposal bond as follows:

"That before the bond of a bidder provided for in the aforesaid section is approved there shall be endorsed thereon the oaths of the sureties therein taken before an officer qualified to administer oaths, that they are owners of real estate worth in the aggregate a sum double the amount of said bond, over and above all judgments, mortgages and executions after allowing all exemptions of every character whatever."

It will thus be seen the preceding sections, superseded by qualifying laws, provide only for the guaranty that the bidder should enter into a contract. Nothing was said about the faithful performance of the contract after being entered into.

From a consideration of the terms of the instruments themselves, the laws of their existence, and from the course of legislation on this subject, I am persuaded the bonds in controversy must be held to be absolute undertakings to pay the amounts therein named as liquidated damages in case of condition broken, and not as indemnity or security to the government against loss or damages for breach of

contract. Am further advised such holding is in conformity with former rulings made by the able judges of this district while presiding at the circuit.

Considering, then, the penalties of the bonds involved in this action to be a debt absolutely owing from defendants to plaintiff as liquidated damages at the time this action was brought against the Bonding Company in the Circuit Court for the District of Maryland, the remaining question is the effect of the former recovery of judgment against the Bonding Company for damages actually occasioned to the government by the breach of the contract entered into by the defendants Alcorn, and the satisfaction of such judgment. The proposal bonds here involved and the contract made by Alcorn with the government, the performance of which is secured by the Bonding Company, were separate and independent undertakings—the one an absolute undertaking to the government to pay a sum certain, contingent upon the default of stipulation to perform the contracted service alone, the other a contract of indemnity to pay the government an amount contingent upon the actual loss to the government occasioned by a breach of the stipulation to perform the service by the bidder. The latter undertaking has been by judgment and satisfaction discharged. Does the former remain, or does such judgment and satisfaction discharge the independent undertaking, and absolve the defendants in this case? To warrant the holding that the former judgment and its satisfaction concludes and bars the present litigation, such ruling must be based on some well-recognized principle of law, and, if none such can be found, the defense must be disallowed. Therefore, on what ground can such holding be predicated? In my judgment, it cannot be placed on the ground of the election of inconsistent remedies, for that both remedies were open to plaintiff, and the pursuit of the one on the contract for unliquidated damages for its breach does not bar this action of debt to recover the liquidated damages.

In National Surety Co. v. United States, 123 Fed. 294, 59 C. C. A. 479, it is held:

"Where the United States took a proposal bond securing performance of a mail route contract, and after letting the contract required another bond from the contractor, each obligation was an independent undertaking, and the second obligation did not stand as a guaranty for the performance of the first."

Neither am I of the opinion the defense interposed can be upheld on the ground that a party may not twice have satisfaction of the same claim or demand, for, as had been seen, the demands here are not the same, and cannot be recovered in the same form of action. The one here made is in an action of debt. The other now interposed as a defense was an action for unliquidated damages for breach of the contract, which unliquidated damages could not have been recovered in an action of debt. True, the question here presented was ruled in United States v. Oliver et al. (C. C.) 36 Fed. 758, in opposition to the conclusion I have reached. The reason for the holding made is not given, and the conclusion there reached is to my mind both unsatisfactory and inconclusive. Therefore, as I am unable to find any estab-

lished legal ground for upholding the defense urged in bar of this action, the demurrer thereto must be sustained.

To this ruling the defendants will be allowed an exception, and unless application by the defendants to plead over is made and allowed within 20 days from the filing of this opinion, judgment will enter as prayed in the petition.