### NEW YORK & N. E. R. CO. v. CHURCH et al.

#### (Circuit Court of Appeals, First Circuit. September 13, 1893.)

#### No. 58.

1. DEMURRAGE—STIPULATION FOR PRECEDENCE IN DISCHARGE—BREACH.
   A breach of a stipulation in a bill of lading giving the vessel precedence in discharging, under pain of double demurrage during time lost by failure to do so, entitles the vessel to such demurrage, although she is not detained, altogether, beyond the lay days allowed in the preceding part of the bill.

2. SAME—RATE OF DEMURRAGE—STIPULATION CONTROLS.
   Demurrage will be allowed at the rate stipulated in the bill of lading or charter party, unless, at least, the loss to the ship is shown to be less.

Appeal from the District Court of the United States for the District of Massachusetts.

In Admiralty. Libel by Joseph H. Church and others against the New York & New England Railroad Company to recover demurrage claimed to be due under a bill of lading. There was a decree for libelant in the district court. Respondent appeals. Affirmed.

The bill of lading was taken by the Pennsylvania Railroad Company, and covered a cargo of coal shipped on board the schooner Glenwood from Philadelphia to the respondent railroad company, at Boston. Across its face were stamped the words, "Subject to conditions National Association Bill of Lading." At the hearing, libelants put in evidence what they claimed to be a National Association bill of lading. This contained a provision that the vessel should have precedence over "all vessels" arriving or giving notice after her arrival. Respondent, however, introduced a National Association bill of lading which merely gave the vessel precedence over all "steam" vessels subsequently arriving or giving notice.

James Milton Hall, (Charles A. Prince, on the brief,) for plaintiff in error.

Edward S. Dodge, for defendants in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The first question is whether the schooner Glenwood, in discharging her cargo, was entitled to precedence over all vessels subsequently arriving, or whether, by the terms of the contract or bill of lading of the National Association, regulating the order in which vessels should be relieved of their cargo, precedence was only given over steam vessels subsequently arriving and giving notice.

It is apparent from the record that the district court found as a fact that the Pennsylvania Railroad was the agent of the New York & New England; that, in taking the bill of lading subject to the conditions of the National Association bill of lading, it acted within the scope of its authority, and either knew or ought to have known the provisions thereof as to precedence, and the the order in which vessels should be discharged; and that all vessels were within the operation of the provision as to precedence. We see no reason for disturbing this finding, and this disposes, not only of the first question, but of the first four grounds of error set forth in the record.

According to this finding below, 24 hours were allowed after arrival and notice to the consignee for receiving the cargo, at the rate of 1 day, Sundays and legal holidays excepted, for every 150 tons thereof, after which the cargo, consignee or assignee, should pay demurrage at the rate of 6 cents per ton a day, Sundays and legal holidays not excepted, upon the full amount of cargo, as per bill of lading, for each and every day's detention, and pro rata for parts and portions of a day, beyond the days above specified, until the cargo should be fully discharged; and after arrival and notice to the consignee, and the expiration of 24 hours, the vessel should have precedence in discharging over all vessels arriving or giving notice after her arrival; and for any violation of this provision she should be compensated in demurrage as if,

while delayed by such violation, her discharge had proceeded at the rate of 300 tons per day.

The master of the Glenwood reported her arrival at the port of Boston, and readiness to discharge her cargo, at 7 A. M., June 8, 1891, to the wharfinger of the New York & New England Railroad Co.; and on the same day, at 7:30 A. M., schooners Lyman M. Law and Sullivan Sawin were reported, and were given precedence at the wharf, notwithstanding the earlier arrival and report of the Glenwood. The consignee contended that the precedence in order of arrival was only given over steam vessels, and, as the Lyman M. Law and Sullivan Sawin were not steam vessels, that they were not within the contract; but as it has been determined, as a matter of fact, that the word "steam" was not a part of the contract, it follows that all vessels were entitled to discharge in the order of arrival, and the consignee's contention in this respect is therefore answered by the contract itself.

It is further contended by the consignee, in substance, that if it should be determined that the Glenwood was entitled to precedence over the Lyman M. Law and Sullivan Sawin, and that giving priority to the latter was a violation of the provisions of the contract, it should not be held to be the stipulated demurrage, for the reason that the Glenwood was not detained beyond the time in which the consignee might hold her at the wharf, and that her discharge was completed within the lay days allowed in the first part of the contract.

Assuming the fact to be as the consignee contends, we cannot sustain the position taken. The leading feature of the contract is the idea that vessels should have precedence according to the order of their arrival and report. It is quite probable that the parties intended to give liberal lay days for the discharge, and more than is ordinarily required, and it is a reasonable inference that it was understood that if time was gained the vessels should receive the benefit. It cannot be supposed, however, that parties contracting for the discharge of vessels in the order of their arrival and report could have contemplated that it should be left to the arbitrary caprice of the consignee to reverse the order of discharge, and give precedence to vessels of later arrival and report, and respond in nominal damages only. Under such construction, the consignee would take the benefit of the liberal provision as to lay days, which was intended as a safeguard in his favor against accident and unforeseen contingencies, rather than a shield for wrongdoing, in the teeth of the express provision of the contract as to precedence in order of arrival and report.

As a general rule, courts of admiralty have allowed the demurrage stipulated in contracts of charter party and bills of lading. 1 Pars. Shipp. & Adm. 313. This would certainly be the rule unless the loss to the shipowner is shown to be less. Carv. Carr. by Sea, 609. It is not made to appear that the loss to the Glenwood by the wrongful detention was less than the stipulated demurrage, and that sum must therefore be accepted as the basis of just compensation, under the circumstances of this case. The consignee, in the case under consideration, set aside the Glenwood,

which was entitled to discharge her cargo in order of arrival, and gave precedence to a vessel subsequently arriving and making report. We see no reason for varying the general rule in this particular case. The record presents no question as to the correctness of the computation of demurrage.

Decree of the district court affirmed, with interest from November 4, 1892, to date of the decree of the district court.