## THE COLOMBIA.

(District Court, S. D. Alabama. June 4, 1912.)

### No. 1,293.

1. SHIPPING (§ 170*)—"DEMURRAGE"—NATURE OF LIABILITY.

"Demurrage," in the proper sense of the term, is an allowance to a vessel in compensation for the earnings she is improperly caused to lose, and can only be allowed when profits have either actually been lost or may reasonably be supposed to have been lost, and their amount was previously fixed by contract, or is proven with reasonable certainty.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 565–567; Dec. Dig. § 170.*

For other definitions, see Words and Phrases, vol. 2, pp. 1981–1982; vol. 8, p. 7633.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SHIPPING (§ 170*)—CONTRACT FOR REPAIRS—CONSTRUCTION—DEMURRAGE FOR DELAY IN COMPLETING.

Under a contract for repairing a ship, which required the repairs to be completed in 12 running days, and provided that, "should the contractor exceed the time mentioned, he must pay the ship a demurrage at the rate of $100, for each and every day he is in excess of his contracted time," no damages are recoverable by way of demurrage, although the contractor was 29½ days in excess of the contract time in completing the work, where the vessel had no charter, and was not employed when the work was commenced, and was not offered a charter, and did not obtain one until some days after its completion.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 565–567; Dec. Dig. § 170.*]

3. DAMAGES (§ 74*)—BREACH OF CONTRACT—PENALTY—LIQUIDATED DAMAGES.

A provision in a contract for the payment of a fixed sum for its breach, whether as a penalty or as liquidated damages, will not be enforced where it appears that no damage has been sustained.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 176; Dec. Dig. § 74.*]

4. SHIPPING (§ 170*)—CONTRACT FOR REPAIRS—PENALTY FOR DELAY.

If a sum agreed to be paid for delay in completing repairs on a ship is regarded as a penalty, a court of admiralty will not enforce the payment where the facts are such that a court of equity would not.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 565–567; Dec. Dig. § 170.*]

In Admiralty. Suit by the Home Industry Iron Works against the Steamship Colombia. Decree for libelant.

Bestor & Young, of Mobile, Ala., for libelant.
Hanaw & Pillans, of Mobile, Ala., for claimant.

TOULMIN, District Judge. This is a suit to recover the contract price for certain materials furnished and repairs done on the steamship Colombia under a contract made between the master of said steamship and the libelant. The contract price to be paid for said material and work was $2,783, which said sum is claimed to be due and unpaid.

The libelant agreed to do the repairs, as per specifications, for the sum named, "work to be completed in twelve running days," and also agreed "to pay a demurrage as per specifications." The specifications provided that:

"Should the contractor exceed the time mentioned he must pay the ship a demurrage at a rate of $100.00 for each and every day he is in excess of his contracted time."

The claimant sets up in answer to libelant's claim that said work was not completed by the libelant in the time specified in the contract, but that libelant was 29½ days in excess of said contracted time in completing the work. Claimant claims that by the terms of said contract there is due to him by the libelant demurrage as agreed, to wit, at the rate of $100 a day, making the sum of $2,950, being an amount of $167 in excess of the sum claimed by the libelant. On the trial it was admitted that the work done by libelant was done to the satisfaction of the master and representatives of the steamship. It was also admitted that the number of days in completing the work was 29½ days in excess of the contracted time; and it was further admitted that nothing had been paid libelant for the work done. The claimant abandoned so much of his claim as was in excess of that of the libelant, to wit, the sum of $167.

The court will always seek to ascertain the true and real intention of the contracting parties, giving due weight to the language or words used in the contract, in view of the circumstances and conditions under which it was made. Turner v. City of Fremont (C. C.) 159 Fed. 221; Keeble v. Keeble, 85 Ala. 552, 5 South. 149. The agreement in this case was that the work would be completed in 12 running days, and, should the contractor exceed the time mentioned, he would pay the ship a demurrage at a rate of $100 for each and every day he was in excess of his contracted time. The vessel was not under charter, and was not otherwise employed at the time the contract was made. She had been engaged in the fruit trade in this port under charter to an importer of bananas. That charter had expired a few days before the contract for the repairs of the vessel was made. It was the dull season for the importation of bananas into this port. There were several fruit vessels besides the Colombia without charter or other employment at the time the contract involved in this case was made. Other vessels than the Colombia were also laid up and undergoing repairs by the libelant at the same time. The contract provides that the libelant shall pay a demurrage for each and every day in excess of the time mentioned in the contract in which he was to complete the work.

[1] "Demurrage" in its technical and popular signification is compensation for the delay of a ship in her employment or voyage. It is a sum fixed by contract, or, if the amount of compensation is not so fixed, implied for the delay or detention of a vessel in the strict sense of the term, in the loading and unloading of cargo. The term "demurrage" is commonly applied to the damages sustained by such delay or detention. "Demurrage," in the proper sense of the term,

is an allowance or a reward to a vessel in compensation for the earnings she is improperly caused to lose. It is a proper element of damages, but can only be allowed when profits have either actually been lost, or may be reasonably supposed to have been lost, and their amount is previously fixed by contract, or is proven with reasonable certainty. 9 Am. & Eng. Encyc. of Law (2d Ed.) 222; The Conqueror, 166 U. S. 110–125, 17 Sup. Ct. 510, 41 L. Ed. 937. It has been said that "demurrage is only an extended freight or reward to the vessel in compensation for the earnings she is improperly caused to lose." Donaldson v. McDowell, 1 Holmes, 290, Fed. Cas. No. 3,985. As a general rule, courts of admiralty have allowed the demurrage stipulated, unless the loss to the ship is shown to be less. 1 Pars. Ship. & Adm. 313; Carver Carr. by Sea, 609; New York & N. E. R. Co. v. Church, 58 Fed. 600, 7 C. C. A. 384. "To entitle the owner to demurrage there must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss. It does not follow as a matter of necessity that anything is due for the detention of a vessel whilst under repair." There would be where a voyage was lost or where the vessel would have been beneficially employed. The Conqueror, supra; The Clarence, 3 W. Rob. 283; 9 Am. & Eng. Encyc. of Law, supra; The Saginaw (D. C.) 95 Fed. 703.

[2] It is to be presumed that the parties to the contract well knew the legal meaning and popular signification of the term "demurrage," and that they used it in its legal and popular sense and meaning. If so, their contract should be construed as an agreement that the libelant would pay to the ship such sum as damages as would compensate her for the earnings she should be caused to lose by the libelant's default. Such is, in my opinion, the correct and just interpretation of the contract in this instance.

It does not appear, in this case, that the ship lost anything by her detention whilst under repairs. The proof is that she had no engagement or voyage interrupted by the detention; that she was not under charter; had no charter or employment offered her during the period of her detention, and made no effort to get a charter. The master of the ship testified that he told Bogue, the manager of libelant's company at some time (whether before or after the expiration of the time in which the work was to be completed is not very clear, the evidence of the master of said steamship and of Bogue on the subject being in conflict, the one claiming it was before and the other that it was after) that he had better look out, as the ship might get a charter at any time; and Bogue stated that the master said, if so, he would have to pay demurrage. The master denied saying anything about demurrage. But the witnesses agreed that the master at that time said that the owner (who resides in Norway) was working hard to get a charter.

August Kling, the president of the libelant company, testified that a few days after they had entered upon the work of repairs, and were working night and day, the master of the ship came to the shop and told him it was not necessary to do any night work, that they would

not be held responsible for demurrage "except the ship got a charter," and that she had no charter then. The master denied making this statement. It, however, appeared from the evidence that they thereafter ceased working at night.

In my view of the case, it is unnecessary for me to endeavor to reconcile the conflicting statements of these witnesses. If the statements referred to were made by the master, as testified to by Kling and Bogue, they did not constitute an alteration or modification of the contract. But I think they, in connection with the conduct of the libelant in regard to the work, would tend to show or indicate how the parties themselves construed the contract, and which, in my judgment, is the correct construction. As I have already said, demurrage is an allowance for profits which have actually been lost or may be reasonably supposed to have been lost. My construction of the contract is that libelant would pay damages in compensation for any loss the ship might suffer by the delay in completing the work on her. I find no evidence to show that she suffered any pecuniary loss or a reasonable supposition that there was any from the delay in the work. There was no charter or other employment obtained by the ship until two or three days after the work was completed when the ship got a temporary charter to take the place of another steamer which had met with an accident and had to lay up for a short time for repairs. The Saginaw (D. C.) 95 Fed. 703; The Wm. M. Hoag (D. C.) 101 Fed. 846; The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937. But the claimant's contention is that the demurrage rate is specified in the contract, that the sum to which he is entitled is fixed by the contract as "liquidated damages," and this sum he claims as a set-off to libelant's demand.

[3] It is a well-settled rule of law that parties may in a case where the damages are of uncertain nature estimate and agree upon the measure of damages which may be sustained from the breach of such agreement. Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 643, 22 Sup. Ct. 240, 46 L. Ed. 366; The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937. And, where there is a provision in the contract for the payment of a fixed sum as damages, it is commonly called "liquidated damages."

"Conceding the rule to be that in order to recover a sum as liquidated damages it is unnecessary to prove actual damage, it is also true that no provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court sees that no damage has been sustained." Gay Mfg. Co. v. Camp, 65 Fed. 794–800, 13 C. C. A. 137; Northwest Fixture Co. v. Kilbourne & Clark Co., 128 Fed. 261, 62 C. C. A. 638; 19 Am. & Eng. Encyc. of Law (2d Ed.) 410; New York & N. E. R. Co. v. Church, 58 Fed. 600, 7 C. C. A. 384; 1 Pars. Shipp. & Adm. 313; Sedg. on Damages, 215; 1 Pom. Eq. Jur. 433–444. In Société des Voiliers Francais v. Oregon R. & Nav. Co. (D. C.) 178 Fed. 333, in a suit claiming demurrage,

the libelant contended for eight cents per day per ton upon the net tonnage of the vessel. The court said:

"This rate, as is well known, is the one ordinarily stipulated for in charter parties, and is imposed in the way of a penalty for delay in loading."

[4] If the sum agreed to be paid as fixed by the agreement in the case at bar is a penalty for the delay in completing the work on the ship or to secure the payment of the amount of damage that the ship may actually suffer from such delay, the ship cannot recover more than the damage actually sustained. "In such cases the courts sitting in admiralty award the damages actually suffered. * * * A court of admiralty within the scope of its powers acts upon equitable principles; and when the facts before it, in a matter within its jurisdiction, are such that a court of equity would relieve, and a court of law could not, it is the duty of the court of admiralty to grant relief." Watts v. Camors, 115 U. S. 361, 6 Sup. Ct. 91, 29 L. Ed. 406; The Virgin, 8 Pet. 538, 8 L. Ed. 1036; The Orleans v. Phoebus, 11 Pet. 175, 9 L. Ed. 677; Gay Mfg. Co. v. Camp, 65 Fed. 799–800, 13 C. C. A. 137.

The Supreme Court of Alabama, in the case of Keeble v. Keeble, 85 Ala. 552, 5 South. 149, said:

"The courts are disposed to lean against any interpretation of a contract which will make it liquidated damages; and in all cases of doubtful intention will pronounce the stipulated sum a penalty."

Decree for the libelant.