[Civ. No. 4716. First Appellate District, Division One.—December 13, 1924.]

HANLON DRYDOCK AND SHIPBUILDING COMPANY, INC. (a Corporation), Respondent, v. G. W. McNEAR, INC. (a Corporation), Appellant.

[1] CONTRACTS—LIQUIDATED DAMAGES — CODE PROVISIONS. — Under the code provisions of this state, a contract which attempts to fix the amount of damages in anticipation of an obligation is void to that extent (Civ. Code, sec. 1670), but ''the parties to a contract may agree therein upon an amount which shall be pre-

---

1.  See 8 R. C. L. 559 et seq.; 8 Cal. Jur. 844 et seq.

sumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage" (Civ. Code, sec. 1671).

[2] ID.—REPAIR OF STEAMER—DAMAGE DUE TO DELAY—INABILITY TO FIX AMOUNT — FINDINGS — EVIDENCE. — In this action involving the validity of a provision in a contract for the repair of an oil tank steamer limiting the liability of plaintiff for damages for delay in completing the work to a specified sum per day, the evidence was amply sufficient to justify the trial court in finding that, at the time the contract was made, it was impracticable and extremely difficult to fix the amount of the actual damage that might result in case of breach of the covenant to do the work within a specified time.

[3] ID.—INABILITY TO DETERMINE ACTUAL DAMAGE—TIME.—At the time such contract was made, it having been impracticable and extremely difficult to fix the amount of the actual damage that might result in case of breach, the provision therein for liquidated damages was valid and enforceable, notwithstanding thereafter, at the time of the breach, it became practicable and not difficult to fix the actual damage.

[4] ID. — USE OF TERM "PENALTY" — INTENT. — The fact that the clause in the contract providing for the payment of a specified sum for each day's delay was denominated as a "penalty" was of no consequence, where it was plain that the parties intended it as liquidated damages.

[5] ID.—RESULTANT DAMAGE — UNCERTAINTY OF AMOUNT — STIPULATED DAMAGES.—The uncertainty contemplated by the rule that where the amount of actual damage that would result is not uncertain, but is measured by an established rule of law, an agreement for stipulated damages cannot be enforced, is an uncertainty as to the extent and amount, and not as to the proper measure of damages.

[6] ID.—STIPULATED DAMAGES—PLEADING AND PROOF.—Where a party seeks to enforce a stipulated damage clause he must both plead and prove that the clause comes within the protection of section 1671 of the Civil Code, and the stipulation of the parties is of itself not conclusive upon the courts.

[7] ID.—INABILITY TO FIX ACTUAL DAMAGE—SUFFICIENCY OF PLEADING.—In this action to recover for repairing an oil tank steamer under a written contract which prescribed a "penalty" of a specified sum per day for breach of the covenant to do the work within a specified time, plaintiff's plea (to defendant's cross-complaint to recover actual damages for breach of said covenant against delay) of the ultimate fact that "from the nature of the

2.   See 8 R. C. L. 569; 8 Cal. Jur. 850.
3.   See 8 Cal. Jur. 856.
4.   See 8 R. C. L. 563; 8 Cal. Jur. 846.

case it was impracticable or extremely difficult to fix the actual damage which defendant might suffer in the event of breach," etc., was sufficient.

[8] ID.—LIQUIDATED DAMAGES—REASONABLENESS OF AMOUNT—EVIDENCE—ASSUMPTIONS.—The question of the reasonableness of the amount specified in the contract as liquidated damages must be judged in the light of the circumstances existing when the amount was agreed upon; and where the evidence shows that the amount so specified was proposed and written into the specifications by defendant, and was allowed at all times to remain unchanged, that plaintiff calculated and submitted its bid upon the strength of such proposal and statement, that defendant was in a better position than plaintiff to know what its damage would be in case of delay, and that defendant entered into the contract without asking that the amount specified be modified or eliminated, it must be assumed that the sum specified was honestly arrived at, on a fair basis, as representing the reasonable amount of damage defendant believed it would suffer in case of delay and was in good faith inserted in the contract.

[9] ID.—SUPPLEMENTARY ORAL AGREEMENT—REFERENCE TO ORIGINAL CONTRACT.—The trial court having found from sufficient evidence that the oral contract for drydocking, cleaning, and painting was "additional and supplementary" to the original written contract for the repair of the steamer, and that the terms of the original contract, so far as applicable, were made part of the supplementary agreement, defendant was not privileged to claim the benefit of the provisions of the original contract for damages for delay, where the work under the supplementary contract was not completed within the specified time, and reject the portion of such provision that limited the amount of damages recoverable.

[10] ID.—INCORPORATION OF TERMS OF ORIGINAL AGREEMENT—GENERAL FINDING—TIME OF BREACH.—The finding of the trial court that "the terms and conditions of the original contract so far as applicable to said drydocking, cleaning and painting contract were made a part thereof" is not subject to the objection on appeal that it is too general and consequently inoperative, in that it fails to find which of the particular terms and conditions were applicable, where there is only presented to the appellate court those portions of the original contract relating to limitation of time and liquidated damages; and such finding is immaterial where the record shows the breach occurred under the original contract.

[11] ID.—MARKET VALUE—ACTUAL DAMAGE—IMMATERIAL ISSUES—FINDINGS.—The application of the rule of stipulated damages having rendered immaterial the question of the market value of the steamer at the time the breach occurred, the trial court did not err in failing to find what the reasonable market value of the steamer was per day; neither did it err in failing to find upon the question of damages suffered by defendant for payment of

wages and provisions to the crew while the steamer was on drydock after the stipulated time for completion.

[12] Id.—Cause of Delay—Immaterial Issue.—The failure of the trial court to find upon the allegations of negligence as set forth in defendant's cross-complaint was not error where that court allowed defendant the full measure of legal damages resulting from the delay—the cause of the delay, whether from negligence or not, having been an immaterial issue.

[13] Id.—Findings—Evidence—Judgment—Immaterial Issues.—The findings as made having been supported by the evidence and having been sufficient in form and in substance to sustain the judgment, if findings had been made upon immaterial issues the judgment would not be affected thereby.

[14] Id.—Unliquidated Demand—Interest.—The work of drydocking, cleaning, and painting the steamer having been undertaken by plaintiff under an oral agreement that it should be paid the reasonable value of such services, the amount due therefor was an unliquidated demand until the date such amount was made certain by calculation and adjustment between plaintiff's representative and by the engineer who supervised the work for defendant and with whom the agreement was made to drydock, clean, and paint the steamer; and the trial court erred in allowing plaintiff interest on such amount from the date the steamer was redelivered to defendant, where that date was prior to the date the unliquidated demand had been made certain.

(1) 17 C. J., p. 932, n. 42.    (2) 17 C. J., p. 932, n. 42.    (3) 17 C. J., p. 935, n. 61, p. 936, n. 66, p. 941, n. 86, p. 943, n. 93.    (4) 17 C. J., p. 939, n. 76.    (5) 17 C. J., p. 932, n. 42.    (6) 17 C. J., p. 932, n. 42, p. 938, n. 72, p. 939, n. 76, p. 1005, n. 98.    (7) 17 C. J., p. 1005, n. 98; 31 Cyc., p. 720, n. 79.    (8) 17 C. J., p. 946, n. 6, 12 New. (9) 17 C. J., p. 963, n. 22.    (10) 4 C. J., p. 1057, n. 85.    (11) 4 C. J., p. 1059, n. 5.    (12) 4 C. J., p. 1059, n. 5.    (13) 4 C. J., p. 1057, n. 85.    (14) 33 C. J., p. 211, n. 7.

APPEAL from a judgment of the Superior Court of Alameda County. Joseph S. Koford, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

McClanahan & Derby and Snook & Brown for Appellant.

John W. Preston, William B. Acton and William Denman for Respondent.

KNIGHT, J.—Plaintiff Hanlon Drydock and Shipbuilding Company, Inc., recovered a judgment against defend-

ant G. W. McNear, Inc., for the sum of $43,244.45 for repairing an oil tank steamer named "Asuncion." The defendant has appealed.

Respondent and other shipbuilders were invited to submit bids for the repair of said steamer in accordance with plans and specifications dated August 7, 1920, prepared and written by appellant. On August 12, 1920, respondent tendered its bid to perform said work in accordance with said plans and specifications for the sum of $37,000 and on the same day its bid was accepted. Respondent agreed to complete said repairs and to redeliver said steamer, in a seaworthy condition, within twenty days. Said specifications contained the following clause: "A penalty of $400.00 a day will be exacted and deducted from the contract price for each day that elapses between the actual completion of the contract and the time specified by contractor in the tender." On August 21, 1920, the parties made a supplementary contract in writing calling for additional repairs which respondent agreed to make within said period of time for the sum of $7,000. On August 30, 1920, a second supplementary contract was entered into orally between the parties whereby respondent undertood to drydock, clean, and paint said steamer for the reasonable value of the services performed, the work to be completed also within the original twenty-day limit. Said steamer was not ready for redelivery until September 25, 1920, which the court found was twenty-three days in excess of the limitation of time fixed by the contract and for which the court in this action allowed appellant, as provided in the contract, the sum of $400 a day for each day's delay, making a total deduction of $9,200 from respondent's entire demand. One of the main contentions made on this appeal is that the trial court should have declared the $400 a day clause of the contract void, as being a "penalty," and applied the measure of actual damages, which appellant claims amounted to $2,500 a day, making a total of $60,000.

[1] Under the code provisions of this state, a contract which attempts to fix the amount of damages in anticipation of a breach of an obligation is void to that extent (Civ. Code, sec. 1670), but "the parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable

or extremely difficult to fix the actual damage.'' (Civ. Code, sec. 1671.) [2] In respondent's third separate affirmative defense, as amended, to appellant's cross-complaint are set forth facts showing that, from the nature of the case, it was impracticable and extremely difficult, at the time the contract was made, to fix the actual damage that would result to appellant in the event that said ship was not redelivered within the time limit, all of which the court found, upon abundant evidence, to be true. Briefly stated, the evidence shows in this respect that the contract was made during the post-war period when world trading tonnage was extremely uncertain, and the value of the use of a ship could not be estimated with any degree of exactness from month to month. Evidence was given to that effect by appellant's witnesses, who testified in substance that owing to fluctuating rates and unsettled shipping conditions, the value of the use of oil tankers or any other vessels could not be prophesied. The ''Asuncion'' was then nearly twenty years old, which, according to experts, was about the maximum age for efficient service of a tanker. There were no coastal or intercoastal market rates at that time for the use of oil carriers nor were there any such rates to Honolulu or the Orient. Oil companies operating along the coast were employing only their own carriers, so that owners of independent tankers were necessarily compelled to resort to the European trade, which had for its basis vague rates primarily fixed in London, regulated by the law of supply and demand for both oil and tankers and depending upon the extent and route of the voyage called for by the charter-party. The legal status of the parties to this contract was established by conditions existing on August 7, 1920, that being the date of appellant's specifications, pursuant to which respondent's bid was invited, tendered, and accepted. On that date appellant was negotiating for the purchase of said tanker from the Standard Oil Company of California and for a charter-party with the Standard Oil Company of New Jersey, but neither transaction had then been consummated. It would therefore seem quite certain, in view of all of the circumstances, that it was impracticable and extremely difficult when the contract was made to fix the amount of the actual damage that might result in case of breach, and we are satisfied that the evi-

dence in this regard fully justified the trial court in so finding. In fact, appellant expressly admits "that, at the time the contract was made, it was impracticable to say *what* defendant's damage would be in case of subsequent breach and this for the reason that future rates for oil tankers or, indeed, any other vessels could not be foretold." [3] But, appellant contends that proof of those facts alone do not establish a valid case of liquidated damages, for the reason that the question of the impracticability of ascertaining the damages was confined "to the time when the contract between the plaintiff and defendant was entered into and not to the time of the breach or any subsequent time." In this respect appellant asserts that although it may have been impracticable or extremely difficult at the time the contract was made to fix the amount of actual damage that would result in case of breach, still, actual damages were ascertainable at the time of trial and that therefore the trial court should have ignored the agreement made by the parties for the payment of stipulated damages and allowed actual damages which appellant claims amounted to the sum of $2,500 a day. In other words, appellant's legal contention is that, if at the time parties enter into a contract, it is, as the statute says, "impracticable or extremely difficult to fix the actual damages" in case of breach, and for that reason, and upon that ground they agree "upon an amount which shall be presumed to be the amount of damages sustained by a breach thereof," such agreement shall be valid and enforceable only if those conditions continue to remain the same up to and at the time of the breach; but if, for reasons which are unforeseen when the contract was made, conditions change so that when the breach occurs it is then practicable and not difficult to fix actual damages, the agreement of the parties shall be declared unenforceable and void and the rule of actual damages applied.

Appellant concedes that in determining whether a provision in a contract is for liquidated damages, or for a penalty, the fundamental rule, so often announced, is that the construction of these stipulations depends, in each case, upon the intent of the parties, as evidenced by the entire agreement construed in the light of the circumstances under which it was made (*Nakagawa* v. *Okamoto,* 164 Cal. 718 [130 Pac. 707]), and that such intent is to be determined "obviously" as appellant says *"at the time the contract is entered into,*

because that is the time that the amount is fixed and the only time when the intention is manifested"; nevertheless, appellant claims that "the statute (secs. 1670 and 1671, Civ. Code) takes no cognizance of the intent of the parties, and, if the damages can be ascertained at the time of the breach, or even at the time of the trial, the stipulated measure of damages cannot apply." Appellant further concedes that it has found no cases "squarely and flatfootedly" establishing the rule it contends for, but it claims that the inferences from the California decisions clearly imply that such is the applicable rule.

We are convinced that appellant's theory cannot be sustained. If adopted it would practically destroy the power given contracting parties under section 1671 of the Civil Code in any case to make a binding agreement as to stipulated damages, and would in effect be adding to that code section a proviso, namely, "provided such impracticability continues up to and exists at the time of the breach." Appellant's theory is manifestly contrary to authorities of other jurisdictions, notably the federal jurisdiction; it finds no support in the text-books so far as our attention has been called, and if inference may be indulged in, we think the cases of the local jurisdiction clearly indicate that there is no intention to depart from the universal rule established elsewhere.

In the case of *Sun Publishing Co.* v. *Moore,* 183 U. S. 642 [46 L. Ed. 366, 22 Sup. Ct. Rep. 240, see, also, Rose's U. S. Notes], the agreement of the parties was that if the Sun Publishing Company did not return a vessel it had chartered from Moore it would pay Moore "the sum of $75,000 to secure any and all losses in damages which might occur to said boat," etc. Suit was commenced by Moore to recover that sum on account of the loss of the vessel, and upon trial the publishing company contended that where the actual damages can be assessed from testimony the court must disregard any stipulation fixing the amount and require proof of the damage sustained; the court, speaking through Mr. Justice White, said: "We think the asserted doctrine is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and it is not sanctioned by the decisions of this court. And we shall, as briefly as we can consistently with clearness, proceed to so demonstrate." The court then goes on to briefly discuss the

law applicable thereto, and in this connection says as follows: "The decisions of this court on the doctrine of liquidated damages and penalties lend no support to the contention that parties may not *bona fide,* in a case where the damages are of an uncertain nature, estimate and agree upon the measure of damages which may be sustained from the breach of an agreement. On the contrary, this court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an agreed ascertainment of damages, is to be determined by the contract, fairly construed, it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract." The court later says: "We may, at most, say that where they have stipulated for a payment in liquidation of damages, which are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages." The case of *Bailey* v. *Manufacturers' Lbr. Co.,* 224 Fed. 806, is even stronger in declaring against the views of appellant here. That case involved delay suffered by a vessel, and by reason of it suit was instituted to recover demurrage, the amount of which had been agreed upon by the parties. The court said: "To agree upon a fixed sum for demurrage in a charter party is to say in the most positive way that the sum is liquidated damages for detention. Unless it pretty clearly appears that the real intent was otherwise, no court ought to interfere. *New York & N. E. R. R. Co.* v. *Church,* 58 Fed. 600 [7 C. C. A. 384]. . . . *I think the pertinent point of time is when the contract is made.* If, then, the parties are honestly trying to arrange *in advance* a fair basis for *actual damages,* it makes no difference whether it turns out too much or too little. Such agreements are most desirable when the parties act upon an equality, and courts should encourage them to the utmost, instead of being 'disposed to lean against' them, as suggested in *Keeble* v. *Keeble,* 85 Ala. 552 [5 South. 149]." (Italics ours.)

In *Banta* v. *Stamford Motor Co.,* 89 Conn. 51 [92 Atl. 665], the court, in considering this question, says: "The

standard of measure here is not furnished by the plaintiff's actual loss or injury, as the event proved, but by loss or injury which might reasonably have been anticipated at the time the contract was made, or, as we said in *New Britain* v. *New Britain Telephone Co.*, 74 Conn. 326, 333 [50 Atl. 881, 884], 'the presumable loss.' *It is the look forward and not backward, that we are called upon to take,* and the plaintiff is under no obligation to show actual damage suffered substantially commensurate with the $15 a day rate in order to support the provision as one in liquidation of damages.'' (Italics ours.) (See, also, *Schoolnick* v. *Gold,* 89 Conn. 110 [93 Atl. 124].) *Blackwood* v. *Liebke,* 87 Ark. 545 [128 Am. St. Rep. 30, 113 S. W. 210], is another case dealing with this precise question, and it was there said: ''But the question is not as to the status of the parties when the contract terminated, but as to *the status of the parties at the time they made the contract.* It may be as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But, if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then under the authorities there is no reason why that may not be anticipated and contracted for in advance.'' (Italics ours.) That case quotes approvingly from *Sun Publishing Co.* v. *Moore, supra.* The same doctrine was adhered to in *Baltimore Bridge Co.* v. *United Rys. & El. Co.,* 125 Md. 208 [93 Atl. 420]: ''From the authorities given above it may be stated as a settled rule of law that where the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages, in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment, the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract.''

*Pacific Factor Co.* v. *Adler,* 90 Cal. 110 [25 Am. St. Rep. 102, 27 Pac. 36], one of the cases cited and relied upon by appellant, holds, inferentially at least, contrary to appellant's theory. It is there said: ''Whether a contract is such

that 'from the nature of the case' it would be impracticable or extremely difficult to fix the actual damage sustained by a breach thereof is a question of fact which must be determined in each case; and for the purpose of determining this question the court must examine *the attendant and surrounding circumstances under which the contract was entered into.* . . . Parties cannot by their arbitrary agreement preclude such examination by the court or avoid the provisions of the statute." (Italics ours.) It will be noted the opinion does not intimate that the attending circumstances *at the time of breach* or *at the time of trial* must be inquired into, but only those "under which the contract was entered into." The words "when the plaintiff rested" found in another part of the opinion, and emphasized by appellant, have no bearing upon the question at issue. The decision shows that the case was disposed of by a judgment of nonsuit, and on appeal it was merely held that "when plaintiff rested, the nature of the case as presented by the terms of the contract, and its breach as admitted by the answer was such that the court could decide as a fact that it was neither extremely difficult nor impracticable to ascertain the actual damage," and that therefore the judgment of nonsuit was properly granted.

[4] The denomination in the contract of the $400 a day clause as a "penalty" is of no consequence. Even though designated as such it may be held to be liquidated damages, where the intention to the contrary is plain. (Williston on Contracts, par. 784; 1 Sedgwick on Damages, pp. 777–780.)

Other cases relied upon by appellant are *Stark* v. *Shemada,* 187 Cal. 785 [204 Pac. 214]; *Sherman* v. *Gray,* 11 Cal. App. 348 [104 Pac. 1004]; *Thomas* v. *Anthony,* 30 Cal. App. 217 [157 Pac. 823]; *McInerney* v. *Mack,* 34 Cal. App. 153 [166 Pac. 867]; *Eva* v. *McMahon,* 77 Cal. 467 [19 Pac. 872]; *Williamson* v. *Barrett,* 13 How. (U. S.) 101 [14 L. Ed. 68, see, also, Rose's U. S. Notes], and *Wilmington Transp. Co.,* v. *O'Neil,* 98 Cal. 1 [32 Pac. 705]. None of them, however, sustains the proposition advanced by appellant or even, by analogy, gives it support. Furthermore, those cases are readily distinguishable from the instant one by their facts, either in regard to the subject matter of the contract there under consideration or the circumstances prevailing at the time the contract was made. Referring to those cases, it may be conceded that where parties deal with a commodity of extensive barter and sale, with a market value, according

to its condition and quality, such as second-hand furniture (*Stark* v. *Shemada, supra*) or grain bags (*Pacific Factor Co.* v. *Adler, supra*), or where the amount of actual damage was easily ascertainable by mere calculation, as, for instance, by computing in advance the yardage of earth and the cost of removal of the same, to produce a specified grade (*Sherman* v. *Gray, supra*), or where the amount of actual damages that would result is not uncertain, and is measured by an established rule of law, such as the case of the withholding possession of real estate (*Eva* v. *McMahon, supra*), an agreement for stipulated damages cannot be enforced, for the simple reason that under such circumstances it is not impracticable or extremely difficult when making the contract to fix actual damages in case of breach. [5] The uncertainty contemplated by the rule is an uncertainty as to the extent and amount, not as to the proper measure of damages. (Sedgwick on Damages, p. 769.)

[6] It is also well settled, as was held in *Thomas* v. *Anthony, supra,* and *McInerney* v. *Mack, supra,* that where a party seeks to enforce a stipulated damage clause he must both plead and prove that the clause comes within the protection of said section 1671 of the Civil Code. The stipulation of the parties is, of itself, not conclusive upon the courts. (*Pacific Factor Co.* v. *Adler, supra*).  In *Thomas* v. *Anthony* the contract called for the forfeiture of money deposited as stipulated damages in case of default in the purchase of an automobile, and in *McInerney* v. *Mack, supra,* required the payment of a stipulated amount for failure to perform under a real estate broker's contract. In neither case did the party attempting to enforce the stipulation allege or make any effort to prove that his case was brought within the exception contained in said code section. The court consequently held, in each case, that the clause was unenforceable; that the mere stipulations of the contract were not sufficient for that purpose.

In *Wilmington Transp. Co.* v. *O'Neil, supra,* plaintiff sought to recover the sum of $3,500 for the loss of a "lighter" it had rented to defendant under a contract which provided that if the lighter was lost defendant would pay the sum of $3,500. The answer alleged "that the value of the lighter at the time it was delivered to defendant or at any other time thereafter did not exceed $1,800." The answer having admitted execution of the contract and the loss of the

lighter, plaintiff moved for and was granted judgment on the pleadings, the trial court awarding plaintiff the full amount of the stipulated damages. On appeal it was held that the amount agreed upon by the parties was a penalty, and the judgment was reversed, with leave granted plaintiff to amend its complaint so as to set forth actual damages. Aside from the fact that there can be no comparison, we think, between the feasibility of fixing the market value of the use of a "lighter" in 1890, the date of that contract, and of an oil tanker, in 1920, within a few months after the close of the World's War, nothing appears in that decision to show that it was ever averred in the complaint or at any time contended by plaintiff that when the contract was made it was impracticable or extremely difficult to fix actual damage. Certainly there was no evidence offered to that effect; as before stated, judgment was given on the pleadings. The case is therefore not in point.

In the case of *Williamson* v. *Barrett, supra,* the question of liquidated damages was not involved at all. The proposition there was the measure of damages and not the amount, that is, the rule to be applied in ascertaining the value of the use of a boat during the period of repairs, which had been previously sunk in a collision on the Ohio River during the year 1848. The court held that the owner could recover the amount for which "the vessel might have been chartered during the period of the repairs" according to the market price for the hire of such vessels, the court saying that such market price could "be ascertained as readily, and with as much precision as the price of any given commodity in the market." That particular portion of the opinion was vigorously assailed in a dissenting opinion by three members of the court, including Chief Justice Taney, in which it was held that the rule of "loss of market" and "probable profits of a voyage" was "too uncertain in its nature to entitle it to judicial sanction"; that such had been the settled doctrine of that court for more than thirty years, and that "the supposition that the amount of damages can be easily fixed, by what the injured boat could have been hired for, on a charter party, during her detention, will turn out to be a barren theory," etc. The rule announced by the majority opinion had been deviated from, to some extent at least, in later cases. (*The Conqueror,* 166 U. S. 110 [41 L. Ed. 937, 17 Sup. Ct. Rep. 510, see, also, Rose's U. S. Notes] ;

*The Saginaw,* 95 Fed. 703.)   For the reasons stated, we believe the case gives no aid to appellant's theory.   In the case before us appellant offered testimony of experts to show that there was such a thing as a market rate for tankers at the time of breach, and it also offered evidence to the effect that although the ship was purchased by appellant for $350,000, said ship earned for its owners, on its first charter-party (to Copenhagen), consuming less than sixty days, and despite the delay, a net profit of $134,000.   Those matters and figures are not pertinent here, however, because "it is the look forward and not backward we are called upon to take." (*Banta* v. *Stamford Motor Co., supra*), and if it be contended by appellant, notwithstanding its express admissions to the contrary, that the testimony of said expert tended to show that such rates could be foreseen and ascertained with any degree of certainty, at the time the contract was made, such evidence merely raises a conflict on that point, and the finding of the trial court must govern.

We find nothing in the cases of *Los Angeles O. G. Assn.* v. *Pacific Surety Co.,* 24 Cal. App. 95 [140 Pac. 295], and *Dyer Bros.* v. *Central Iron Works,* 182 Cal. 588 [189 Pac. 445], cited by appellant, that is opposed to the general rule above stated.   Those cases involved the construction of pleadings, wherein plaintiff in the first case alleged "that it would be and was and is, impracticable or extremely difficult to fix damages," etc., and plaintiff in the second case alleged "that at all times it was and is impracticable and extremely difficult," etc.   Each complaint was held good as against demurrer, but the opinions do not indicate that the words "and is," as used in the first complaint, or the words "at all times . . . is," as used in the second complaint, were at all necessary to the statement of a complete cause of action or had any special significance whatever.   **[7]**   In the instant case, after setting forth the surrounding circumstances under which the contract was made, respondent alleged, in the language of the code section, the ultimate fact that "from the nature of the case it was impracticable or extremely difficult to fix the actual damage which defendant might suffer in the event of breach," etc., which in our opinion was sufficient.   The disjunctive form of allegation used here passed the test of demurrer in *Los Angeles O. G. Assn.* v. *Pacific Surety Co., supra.*   Apparently appellant did not deem the points now urged of sufficient importance to justify the filing of a

demurrer to the amended complaint; consequently the technical objections now made to the pleading must be considered as having been waived.

[8] Appellant makes the additional contention that the sum stipulated as damages was unreasonable and therefore void. The question of the unreasonableness thereof must, of course, be judged in the light of the circumstances existing when the amount was agreed upon. Much of the evidence on this point has already been narrated, but in addition it shows that said sum was proposed and written into the specifications by appellant, and was at all times allowed to remain unchanged. It was upon the faith of the proposals and statements made in said specifications that respondent calculated and tendered its bid. If, after respondent's bid had been invited and before it was accepted, conditions changed as to ownership of the vessel or as to concluding a charter-party therefor, so that appellant knew that the sum stated in the specifications had become grossly inadequate to cover appellant's damage in case of delay and that the amount thereof would reach a sum greatly in excess of that stated in the stipulation, we believe that in order to legally charge respondent with such increased damage, said stipulation should have been modified or eliminated by appellant before the acceptance of respondent's bid and the letting of the contract. Appellant surely knew better than respondent what its damage would be in case of the delay, and it cannot be supposed that appellant would have entered into a contract containing a stipulation written by itself, for the payment of damages in the sum of only $400 a day if it knew or had reason to believe that its damage would approximate $2,500 a day and that it could legally recover that amount. It must, therefore, be assumed from these circumstances that the sum of $400 a day was honestly arrived at, on a fair basis, as representing the reasonable amount of damage appellant believed it would suffer in case of delay and was in good faith inserted in the contract. Furthermore, we are of the opinion that under the circumstances related appellant is not in a position to question the reasonableness of that amount.

[9] The next point made by appellant is that the oral agreement of August 30, 1920, for drydocking, cleaning, and painting the vessel was an independent contract, and that none of the terms of the original contract applied thereto;

that the delay did not occur under the original contract, but under the latter contract, and that, therefore, the provisions of the original contract for stipulated damages did not apply. The trial court found that the oral contract for drydocking, cleaning, and painting was "additional and supplementary to the original contract," and that the terms of the original contract, so far as applicable, were made part of the supplementary contract. There is ample evidence to support the finding. The subsequent agreement clearly related to and became a part of the one general transaction, the work of drydocking, cleaning, and painting having been begun before the work under the original contract had been finished. When respondent agreed to the limitation of time stated in the original contract, the $400 a day clause for delay was not expressly excluded and respondent's understanding was that it was included. We believe that under the circumstances the promise made by respondent in the original contract to complete the work in twenty days and the promise to pay stipulated damages in case such time was exceeded must be construed as a single provision, and that appellant may not split the same so as to demand the enforcement of the beneficial portion and reject the application of the remaining portion.

But whether or not the $400 a day clause applied to the supplementary contract makes little difference, for the reason that it manifestly appears from the evidence that it was the original contract that was breached.

The twenty-day limitation expired on September 2, 1920. The original contract provided that this $400 a day clause should apply "for each day that elapses between the *actual completion of the contract* and the time specified by the contractor in the tender." Said contract further provided that the contractor's time and liability should "cease when repairs and replacements are completed; when a sufficient dock trial is completed and he has removed all his equipment and dirt occasioned by the repairs to the vessel, and the vessel is in all respects ready to leave the works of the contractor in a seaworthy condition and ready for the sea"; also that "when the work of installation is completed, the boilers will be given a six-hour dock trial under full steam with main engines and auxiliaries running full speed." Appellant's construction of the contract pertaining to completion of the

work and redelivery of the vessel is found in its answer wherein it is alleged "that in said agreement for the repair of said steamer 'Asuncion' it was agreed between the parties that plaintiff should complete its work and redeliver said steamer to defendant on Oakland estuary within twenty days from date the repairs were begun." It therefore clearly appears that when the repairs and replacements were completed it was necessary to make certain tests, and the ship was thereafter to be redelivered on Oakland estuary in a seaworthy condition and ready for the sea, and that all of these requirements should be complied with on or before September 2, 1920, or $400 a day was to be deducted from the contract price until such redelivery was made. The evidence shows that the vessel was placed in respondent's drydock on September 1, 1920. At that time the repairs called for by the original contract had not been completed. On September 4, 1920, respondent attempted to remove the vessel, but the drydock failed to function and the vessel did not leave the drydock until September 22, 1920. Even then, when the vessel left the drydock all of the repair work required to be done under the original contract had not been completed. The vessel was thereupon taken to the Moore Company's plant and drydocked, and the work specified in the original contract completed. The vessel was not redelivered to appellant in a seaworthy condition nor was it ready for the sea until September 25, 1920, that is, after it left the Moore Company plant. The Moore Company was paid $1,195 by respondent for completing the work respondent should have performed under the original contract. It matters little that the repairs called for by the original contract were, as appellant states, "substantially completed" when respondent's drydock broke down. The fact is they were not completed. Nor does it make any difference that much of the Moore Company bill was incurred, as appellant claims, for making "a re-examination of the original work previously made necessary by the fact that the drydock had broken down." It all proves that until the ship left the Moore Company plant it was not in a seaworthy condition nor ready for redelivery.

[10] Appellant further objects to the finding that "the terms and conditions of the original contract so far as applicable to said drydocking, cleaning, and painting contract were made a part thereof" upon the ground that the finding

is too general, and consequently inoperative, in that it fails to find which of the particular terms and conditions were applicable. There was only presented for consideration here those portions of the original contract relating to limitations of time and liquidated damages, and with the rest of the contract we are not concerned. Moreover, the finding becomes immaterial in any event in view of the fact that the breach occurred under the original contract.

[11] Appellant complains of the failure of the court to find "what the reasonable market value of the 'Asuncion' was per day" and upon the question of "damages suffered by defendant for payment of wages and provisions to the crew of 'Asuncion' while on drydock." The application of the rule of stipulated damages rendered immaterial the question of the market value of the ship at the time the breach occurred, and in answer to the latter point it is enough to say that respondent was not obligated to make any payments or perform any duties other than those specified in the contract.

[12] The failure to find upon the allegations of negligence as set forth in appellant's cross-complaint was not error. The court allowed appellant the full measure of legal damages resulting from the delay, and hence the cause of the delay, whether or not from negligence, became an immaterial issue. [13] The findings as made are supported by the evidence and are sufficient in form and in substance to sustain the judgment, and even if immaterial issues had been found upon, the judgment would not be affected thereby.

[14] Appellant further objects to the allowance for interest. We think the trial court improperly awarded respondent interest on the sum sued for in the second count from the date of the redelivery of the vessel to October 25, 1920, which amounted to $54.18. Up to October 25, 1920, the amount due respondent under the supplementary contract was an unliquidated demand. Consequently respondent was not entitled to interest thereon. (*Cox* v. *McLaughlin,* 76 Cal. 60 [9 Am. St. Rep. 164, 18 Pac. 100]; *Macomber* v. *Bigelow,* 123 Cal. 532 [56 Pac. 449]; *American Hawaiian Engineering Co.* v. *Butler,* 17 Cal. App. 764 [121 Pac. 709].) But on that date the amount was made certain by calculation and adjustment between respondent's representatives and an engineer named Martignoni, who supervised all of the repair work for appellant and with whom the agreement

was made to drydock, clean, and paint the ship. The amount then agreed upon by those parties was the amount sued for in said second count. After the unliquidated demand had thus been made certain, respondent's right of recovery vested immediately and carried with it the right to interest. (Sec. 3287, Civ. Code.) Respondent on the date mentioned had fully performed the contract; appellant had accepted "the fruits thereof" without objection and was consequently clearly in default. (*Easterbrook* v. *Farquharson,* 110 Cal. 311 [42 Pac. 811]; *Mullenary* v. *Burton,* 3 Cal. App. 267 [84 Pac. 159]; *Olcovich* v. *Grand Trunk R. R. Co.,* 179 Cal. 332 [176 Pac. 459].) Other than as above specified, the allowance of interest was proper.

The judgment will be modified by deducting therefrom the sum of $54.18, representing the amount of interest improperly allowed, and as thus modified will stand affirmed. Respondent will recover its costs

Tyler, P. J., and Cabaniss, J., *pro tem.,* concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1925.

All the Justices concurred.